494 A.2d 1

**Robert E. SLOTA and Deanna L. Slota and Norman J. Shachoy and Maryellen S. Shachoy, Appellants,**

v.

**The MOORINGS, LTD., Appellee.**

Superior Court of Pennsylvania.

Argued July 12, 1984.

Filed April 26, 1985.

Reargument Denied June 28, 1985.

Robert E. Slota, Bryn Mawr, for appellants.

Leslie A. Miller, Philadelphia, for appellee.

Before WIEAND, OLSZEWSKI and POPOVICH, JJ.

WIEAND, Judge:

Robert E. Slota and his wife, Deanna, together with their friends, Norman and Maryellen Shachoy, commenced an action against The Moorings, Ltd. to recover burglary losses sustained while they were guests at a hotel owned by the defendant, from whom they had also chartered a yacht, in St. Lucia, British West Indies. The Slotas are residents of Pennsylvania; and the Shachoys are residents of Massachusetts. The Moorings, Ltd. is a corporation organized under the laws of the British Virgin Islands; it has neither office nor place of business in Pennsylvania. The trial court sustained preliminary objections raising questions of jurisdiction; and the plaintiffs have appealed. We affirm.

Appellants argue first that the trial court acted prematurely and without an adequate record because depositions were not taken and submitted pursuant to Pa.R.C.P.

209.[1] This rule, however, applies to petitions and answers. It does not apply to preliminary objections. A preliminary objection is a pleading, not a petition. Preliminary objection procedure is governed by Pa.R.C.P. 1028, which provides, in subsection (c), that "[t]he court shall determine promptly all preliminary objections. If an issue of fact is raised, the court shall take evidence by depositions or otherwise."

■ In the past, both the Supreme Court and this Court have said that where facts are controverted, the trial court must "resolve the dispute by receiving evidence thereon through interrogatories, depositions or an evidentiary hearing." *Holt Hauling and Warehousing Systems, Inc. v. Aronow Roofing Co.*, 309 Pa.Super. 158, 161, 454 A.2d 1131, 1133 (1983), quoting *Luitweiler v. Northchester Corp.*, 456 Pa. 530, 535, 319 A.2d 899, 902 (1974). In the instant case, the evidence was submitted via affidavit. This is not a recommended procedure. It would have been preferable to proceed by depositions or written interrogatories. However, the facts attested to in the affidavit are clear and specific. The deposition of Robert Slota, on the other hand, discloses that the information to which he testified was nothing more than rumor, surmise and conjecture. He made no effort to substantiate any of his assertions with depositions, interrogatories, affidavits or documentary evidence. We conclude, therefore, that the trial court did not err in finding that the facts were as set forth in appellee's affidavits and that appellants had failed to show facts sufficient to allow the courts of Pennsylvania to exercise in personam jurisdiction in the Pennsylvania courts. There is no need to remand for the taking of

1. Pa.R.C.P. 209 provides in part as follows:
 If, after the filing and service of the answer, the moving party does not within fifteen days:
 (a) Proceed by rule or by agreement of counsel to take depositions on disputed issues of fact; or
 (b) Order the cause for argument on petition and answer (in which event all averments of fact responsive to the petition and properly pleaded in the answer·shall be deemed admitted for the purpose of the rule); the respondent may take a rule ... to show cause why he should not proceed....

depositions or the filing of interrogatories. See: *Buxbaum v. Peguero,* 335 Pa.Super. 289, 294–295, 484 A.2d 137, 140–141 (1984); *Bensalem Township v. Terry,* 317 Pa.Super. 380, 464 A.2d 371 (1983). See also and compare: *Szekely v. Abilene Flour Mills Co.,* 211 Pa.Super. 442, 237 A.2d 242 (1967) (where disputed facts not resolved by affidavits, case will be remanded "to present evidence by deposition, interrogatories, or otherwise"). Nor was it essential in this case that appellee's personnel come into Pennsylvania for an evidentiary hearing.

Appellants ask this Court to find jurisdiction in the courts of Pennsylvania (1) because the contract for lodging was entered and partially performed in Pennsylvania; and (2) because, in any event, The Moorings allegedly conducted business continuously and systematically in Pennsylvania. There is no merit in either contention.

■ Jurisdiction of the Pennsylvania courts may be exercised with respect to all persons, including corporations, "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.C.S. § 5322(b). A state may exercise personal jurisdiction over a nonresident defendant only so long as there exist "minimum contacts" between the defendant and the forum state. *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Kenny v. Alexson Equipment Co.,* 495 Pa. 107, 117–118, 432 A.2d 974, 980 (1981). The due process clause "does not contemplate that a state may make a binding judgment in personam against an individual or corporate defendant with which the state has no contacts, ties or relations." *International Shoe Co. v. Washington, supra,* 326 U.S. at 319, 66 S.Ct. at 160, 90 L.Ed. at 104. "[M]aintenance of suit against a non-resident defendant must not offend traditional notions of 'fair play and substantial justice.'" *Kenny v. Alexson Equipment Co., supra,* 495 Pa. at 118, 432 A.2d at 980.

In Pennsylvania, jurisdiction over a nonresident may be constitutionally exercised if one of two tests is met. *Barber v. Pittsburgh Corning Corp.*, 317 Pa.Super. 285, 293, 464 A.2d 323, 328 (1983) (allocatur denied December 27, 1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2387, 81 L.Ed.2d 346 (1984); *Beatrice Foods Co. v. Proctor & Schwartz, Inc.*, 309 Pa.Super. 351, 357, 455 A.2d 646, 649 (1982). The first test for exercising jurisdiction has been stated as follows:

First, the defendant must have purposefully availed itself of the privilege of acting within the forum state thus invoking the benefits and protections of its laws. *Hanson v. Denckla* [357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)]. Secondly, the cause of action must arise from defendant's activities within the forum state. Lastly, the acts of the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over it reasonable. *International Shoe Co. v. Washington* [326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)].

*Koenig v. International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers,* 284 Pa.Super. 558, 568, 426 A.2d 635, 640 (1980) (citations omitted), quoting *Proctor & Schwartz, Inc. v. Cleveland Lumber Co.,* 228 Pa.Super. 12, 19, 323 A.2d 11, 15 (1974). See also: *Hart v. McCollum,* 249 Pa.Super. 267, 273, 376 A.2d 644, 647 (1977). If it appears that jurisdiction does not exist by application of this test, then jurisdiction can be exercised only if the nonresident defendant's activities in Pennsylvania, though unrelated to the cause of action, are "continuous and substantial." *Bork v. Mills,* 458 Pa. 228, 329 A.2d 247 (1974). If defendant's activities in Pennsylvania are of the latter type, then personal jurisdiction of the defendant exists for all purposes. *Union National Bank v. L.D. Pankey Institute,* 284 Pa.Super. 537, 542, 426 A.2d 624, 627 (1980); 42 Pa.C.S. § 5301.

Appellants argue first that the courts of Pennsylvania can exercise in personam jurisdiction over The Moorings

by virture of the standard defined in *Koenig* and *Proctor & Schwartz*. They argue that The Moorings entered into a contract with appellants which was formed in Pennsylvania by Slota's signature and that it was "substantially performed" by appellants in Pennsylvania when they issued and sent to The Moorings a check drawn on a Pennsylvania bank. These facts, however, are woefully inadequate to support the exercise of in personam jurisdiction under the three-part test recited in *Koenig* and *Proctor & Schwartz*.

 In order that a nonresident defendant have "purposely availed itself of the privilege of acting within [Pennsylvania]," it must appear, first, that the performance of the contract will have *significant effects* in the forum state. *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Koenig v. International Brotherhood of Boilermakers, supra,* 284 Pa.Super. at 569, 426 A.2d at 640. Obligations entered into by foreign corporations must have "a realistic economic impact on the commerce of this Commonwealth" such that "the defendant should reasonably have foreseen that the transaction would have consequences in this Commonwealth." In the absence thereof, a foreign corporation cannot be said to have "purposely availed itself of the privilege of acting within the Commonwealth...." *Proctor & Schwartz, Inc. v. Cleveland Lumber Co., supra,* 228 Pa.Super. at 19–20, 323 A.2d at 15. "[I]t is the *defendant's* contacts with the forum state that confer jurisdiction over him, and not 'the mere "unilateral activity of those who claim some relationship with [him]." ' " *Koenig v. International Brotherhood of Boilermakers, supra,* 284 Pa.Super. at 571, 426 A.2d at 641 (emphasis in original), quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 298, 100 S.Ct. 559, 567, 62 L.Ed.2d 490, 502 (1980). See also: *United Farm Bureau Mutual Insurance Co. v. United States Fidelity and Guaranty Co.,* 501 Pa. 646, 657, 462 A.2d 1300, 1305 (1983).

Appellants' action is based upon what is alleged to be an implied condition in an "innkeeper's contract" to provide adequate security. Whether such an agreement arose in

Pennsylvania, where appellants unilaterally made reservations and drew a check to pay appellee therefor, is doubtful. The duty to provide secure accommodations, in any event, could be performed only upon appellants' arrival in St. Lucia. By accepting reservations from Pennsylvania residents and receiving pre-payment of rent from them, appellee did not produce "significant effects" or "a realistic economic impact" in Pennsylvania such that it can be said to have purposely availed itself of the privilege of acting within this Commonwealth. See: *Kenny v. Alexson Equipment Co., supra*, 495 Pa. at 125, 432 A.2d at 983–984. There was here nothing more than unilateral activity by appellants.

It is also evident that appellants' cause of action did not arise from appellee's activities in Pennsylvania.

The purpose of the second prong, as it relates to substantive relevance, is to insure that the acts of the nonresident defendant within the forum state represent the factual predicates upon which a cause of action are to be based. Without this requirement, the nexus between the defendant's activities, the cause of action and the forum state have [sic] not been established. Such a causal connection is critical to the assertion of long-arm jurisdiction.

*Kingsley and Keith (Canada) Limited v. Mercer International Corp.*, 500 Pa. 371, 380–381, 456 A.2d 1333, 1338 (Opinion in Support of Reversal), *cert. denied*, 464 U.S. 982, 104 S.Ct. 423, 78 L.Ed.2d 358 (1983). It is obvious that the factual predicate upon which the instant cause of action is based existed exclusively in St. Lucia. The purpose of the second prong, therefore, is not served.

Finally, it is clear that it would *not* be "fair and reasonable under the circumstances" of this case to exercise jurisdiction.

[T]he determination of whether an exercise of jurisdiction is reasonable depends on the burden that would be imposed on the defendant, in light of several factors, including the forum state's interest in resolving the dispute;

the plaintiff's interest in obtaining convenient and effective relief; the interstate judicial system's interest in the most efficient resolution of the controversy and the interest of the several states in furthering substantive social policies.

*Temtex Products, Inc. v. Kramer*, 330 Pa.Super. 183, 196, 479 A.2d 500, 506 (1984), quoting *Kingsley and Keith (Canada) Limited v. Mercer International Corp.*, 291 Pa. Super. 96, 109, 435 A.2d 585, 591 (1981), *aff'd by an equally divided court*, 500 Pa. 371, 456 A.2d 1338, *cert. denied*, 464 U.S. 982, 104 S.Ct. 423, 78 L.Ed.2d 358 (1983). See also: *World-Wide Volkswagen Corp. v. Woodson, supra*, 444 U.S. at 292, 100 S.Ct. at 564, 62 L.Ed.2d at 498; *Nissley v. JLG Industries, Inc.*, 306 Pa.Super. 557, 566, 452 A.2d 865, 869 (1982). The burden that would be placed on The Moorings by forcing them to litigate in Pennsylvania is obvious and heavy. Appellee has offices and employees in the United States only in New Orleans. Its principal places of business are in the British Virgin Islands and in the Windward Islands. All the relevant facts and circumstances of appellants' cause of action are located in St. Lucia. Pennsylvania's interest in resolving this dispute is extremely limited. No Pennsylvania laws have been violated; no duties have been breached in Pennsylvania; and Pennsylvania residents have not been harmed in any way by activities in or contacts made within Pennsylvania by The Moorings. Indeed, only two of the four plaintiffs in this case are Pennsylvania citizens; the Shachoys are residents of Massachusetts. Although appellants, particularly the Slotas, could, from their viewpoint, obtain "convenient" relief in Pennsylvania, their interest in litigating here is far outweighed by the inconvenience to appellee and the lack of contact by the courts of this Commonwealth with the cause of action which appellants seek to enforce. It is apparent, therefore, that appellants can satisfy none of the three requirements set out in *Koenig* and in *Proctor & Schwartz*. This Commonwealth cannot exercise jurisdiction over The Moorings unless its other activities in Pennsylvania "may

fairly be characterized as 'continuous and substantial.' " *Union National Bank v. L.D. Pankey Institute, supra,* 284 Pa.Super. at 542, 426 A.2d at 627. See also: *Bork v. Mills, supra; Goff v. Armbrecht Motor Truck Sales, Inc.,* 284 Pa.Super. 544, 556, 426 A.2d 628, 634 (1980).

"Where the plaintiff's cause of action does not arise from the defendant foreign corporation's business activities in this state, Pennsylvania courts may exercise *in personam* jurisdiction over the defendant only if the defendant's business activities are 'so continuous and substantial as to make it reasonable for the state to exercise such jurisdiction.' " *Whalen v. Walt Disney World Co.,* 274 Pa.Super. 246, 251, 418 A.2d 389, 391 (1980), quoting *Bork v. Mills, supra,* 458 Pa. at 231–232, 329 A.2d at 249. See also: *Lebkuecher v. Loquasto,* 255 Pa.Super. 608, 611, 389 A.2d 143, 145 (1978).

A comparison of two prior decisions of this Court will serve to approximate the quantity and quality of advertising and solicitation which will make it reasonable for the courts of this Commonwealth to exercise jurisdiction over a defendant. In *Whalen v. Walt Disney World Co., supra,* the defendant, a Florida amusement park, engaged "in widespread advertising, solicitation, negotiations, acceptance of reservations, and other activities in Pennsylvania." *Id.,* 274 Pa.Super. at 248, 418 A.2d at 390. However, the defendant had no listed phone number in any Pennsylvania telephone directory and paid no commissions to any travel agent or other person in Pennsylvania. It had, on the other hand, purchased merchandise from a Pennsylvania corporation and a policy of insurance from a Pennsylvania-based underwriter. This Court held that the plaintiffs, who bore the burden of proof, had failed to establish with these facts activities which could be characterized as continuous and substantial.

Distinguished in *Whalen* was the case of *Garfield v. Homowack Lodge, Inc.,* 249 Pa.Super. 392, 378 A.2d 351 (1977), where this Court had been persuaded that jurisdiction could be obtained because of the "intensity" of the defendant's solicitation methods in Pennsylvania. The de-

fendant in *Garfield* had for five years advertised its New York resort weekly in a newspaper published and distributed in the Philadelphia area, had maintained a tollfree telephone number in Pennsylvania for Philadelphia for area residents to use in making reservations, and had made arrangements with Pennsylvania travel agents to pay a ten percent commission for referrals. "[T]his intensive level of activity by appellant in Pennsylvania," held the Court, "provides a substantial enough connection with the Commonwealth to make the exercise of jurisdiction over appellant fair and reasonable under the circumstances." *Id.* at 397, 378 A.2d at 354.

Later, in *Union National Bank v. L.D. Pankey Institute, supra,* the Court made clear that jurisdiction arising out of a defendant's advertising and/or solicitation could be based only on the extent and intensity of the solicitation, i.e., the activities pursued *by the defendant,* and *not* "because a given number of Pennsylvania residents had responded to defendant's advertisements." *Id.,* 284 Pa.Super. at 543, 426 A.2d at 627.

■ In the case sub judice, The Moorings does not employ any agents who reside or perform services in Pennsylvania. It does not have a telephone listing in Pennsylvania, and there is no toll-free number which Pennsylvania residents exclusively can use to reserve accommodations. Appellee has never purchased radio or television time in Pennsylvania, has not conducted a direct mail solicitation of Pennsylvania residents and has not advertised in any publication intended for exclusive distribution in Pennsylvania. Its printed, promotional efforts are not directed to Pennsylvania but appear only in national publications such as *Yachting Magazine, Sail Magazine* and *Cruising World.* It has only one office or place of business in the continental United States, that being in New Orleans, Louisiana. It is neither registered nor licensed to do business in Pennsylvania and has no post office box in this Commonwealth. It has never maintained a bank account in Pennsylvania and has never been assessed by or paid taxes to Pennsylvania or

any municipality therein. Finally, appellee has never entered into a contract requiring total or partial performance on its part in Pennsylvania.

Under these circumstances, we find ourselves in agreement with the trial court which concluded that The Moorings' contacts with this Commonwealth were inadequate to subject it to the jurisdiction of the Pennsylvania courts. Appellee did not become subject to jurisdiction merely because, as appellants contended but appellee denied, The Moorings had conducted occasional mailings to subscribers of national boating magazines, some of which reached the homes of Pennsylvania residents. Such contacts, even if they existed, would be too few, too sporadic and too tenuous to be considered "substantial and continuous."

The Pennsylvania courts, therefore, cannot properly exercise jurisdiction over appellee in the instant case. An attempt to exercise jurisdiction would be inconsistent with due process and the Pennsylvania long-arm statute. The trial court correctly sustained appellee's preliminary objections raising questions of jurisdiction.

Affirmed.