505 A.2d 616

William J. SKINNER and Mary Skinner, his
wife, Appellants,

v.

FLYMO, INC.; Darwin Eckstrom and Jonathan Randall, individually and trading as Eckstrom-Randall Company; Outdoor Power Equipment Institute, Inc.; United States Testing Co., Inc.; and American National Standards Institute, Inc., Appellees.

Superior Court of Pennsylvania.

Argued Oct. 31, 1985.

Filed Feb. 21, 1986.

238

Ellen M. Viakley, Pittsburgh, for appellants.

Mark L. Austrian, Pittsburgh, for appellees.

Before WIEAND, DEL SOLE and HESTER, JJ.

WIEAND, Judge:

William J. Skinner was injured when the blade of a rotary lawn mower came into contact with his foot while he was cutting the lawn at his employer's residence in Warren County. He commenced an action to recover damages against five defendants, one of which was Outdoor Power Equipment Institute, Inc. (OPEI), a nonprofit trade association whose members were manufacturers of outdoor power equipment. OPEI filed preliminary objections raising questions of jurisdiction. The trial court sustained these preliminary objections, holding that OPEI was not subject to the jurisdiction of the Pennsylvania courts. Skinner appealed. We affirm.

OPEI is a Delaware corporation whose only office is located in Washington, D.C. It is not registered to do business in Pennsylvania and does not maintain an office or other place of business in this Commonwealth. OPEI sponsors a certification program pursuant to which its members are entitled to submit samples of their products to an independent laboratory for testing. If a product meets specified safety standards, the manufacturer can purchase from OPEI a label which contains a certification that the product complies with these standards. Flymo, Inc., an Ohio manufacturer of lawn mowers, was a member of the trade association and routinely purchased labels from OPEI for attachment to its lawn mowers. The mowers manufactured by Flymo, Inc. were distributed throughout the United States. One of Flymo's lawn mowers was being used by Skinner at the time he was injured. The mower, bearing an OPEI label, had been sold to Skinner's employer in Pennsylvania by Eckstrom-Randall Company, a distributor of Flymo lawn mowers.

The averments of the complaint were that the lawn mower, even though it complied with the safety standards used in OPEI's certification program, was unreasonably dangerous. The gravamen of the complaint against OPEI was that it had been negligent in failing to establish adequate safety standards for the design and manufacture of rotary lawn mowers. OPEI's preliminary objections, duly endorsed with notice to plead, challenged whether it was subject to in personam jurisdiction in Pennsylvania. In these preliminary objections, OPEI averred, inter alia, that it did not pay taxes in Pennsylvania, had not appointed an agent to accept service in Pennsylvania, was not listed in any telephone directory in Pennsylvania, and had no officers or employees in Pennsylvania. Further, it alleged, it had never conducted educational symposia in Pennsylvania, owned no property in Pennsylvania, had sales in Pennsylvania of less than $650 after January 1, 1982, and had only one Pennsylvania member which, however, was not engaged in the manufacture of walk-behind mowers. Skinner did not file a responsive pleading and, therefore, has admitted the averments of fact contained in OPEI's preliminary objections. 5 Std.Pa.Prac.2d § 25:6. See: Pa.R.C.P. 1026, 1029.

Jurisdiction over a nonresident defendant may be based either upon the specific acts of the defendant which gave rise to the cause of action, or upon the defendant's general activity within the forum state. See: *Burger King Corp. v. Rudzewicz*, 471 U.S. ——, —— n. 15, 105 S.Ct. 2174, 2182 n. 15, 85 L.Ed.2d 528, 541 n. 15 (1985). In order for a Pennsylvania court to assert specific jurisdiction, the cause of action *must* arise out of the defendant's activities within the Commonwealth. See: 42 Pa.C.S. § 5322. See also: *Burger King Corp. v. Rudzewicz, supra* at ——, 105 S.Ct. at 2182, 85 L.Ed.2d at 540–541. General jurisdiction, on the other hand, exists regardless of whether the cause of action is related to the defendant's activities in Pennsylvania, as long as the defendant's activities in this Commonwealth are "continuous and substantial." See: *Bork v. Mills*, 458 Pa.

228, 231–232, 329 A.2d 247, 249 (1974); *Slota v. Moorings, Ltd.,* 343 Pa.Super. 96, 104–07, 494 A.2d 1, 5–6 (1985); *Whalen v. Walt Disney World Co.,* 274 Pa.Super. 246, 251, 418 A.2d 389, 391 (1980). See also: 42 Pa.C.S. § 5301(b). Accord: *Burger King Corp. v. Rudzewicz, supra,* 471 U.S. at —— n. 15, 105 S.Ct. at 2182 n. 15, 85 L.Ed.2d at 541 n. 15.

 Pennsylvania courts may exercise specific jurisdiction over nonresident defendants "to the fullest extent allowed under the Constitution of the United States and [it] may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.C.S. § 5322(b). Where the forum state seeks to assert specific jurisdiction over an out-of-state defendant, who has not consented to be sued there, the Due Process Clause of the Fourteenth Amendment to the United States Constitution "is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz, supra* at ——, 105 S.Ct. at 2182, 85 L.Ed.2d at 540–541 (citation omitted). See: *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 413–14, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404, 411 (1984). The critical question in determining whether the defendant has purposefully directed his activities at residents of the forum is not whether it was foreseeable that defendant's activities would have an injurious effect in the forum state, but whether the defendant's conduct and his connection with the forum state were such that he could reasonably anticipate being "haled" into court there. *Burger King Corp. v. Rudzewicz, supra,* 471 U.S. at ——, 105 S.Ct. at 2183, 85 L.Ed.2d at 542; *United Farm Bureau Mutual Insurance Co. v. United States Fidelity and Guaranty Co.,* 501 Pa. 646, 657, 462 A.2d 1300, 1305 (1983), quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 294, 100 S.Ct. 559, 565–566, 62 L.Ed.2d 490, 501 (1980). This question, in turn, must be resolved by examining the defendant's contacts with the forum state.

██ The Due Process Clause permits a state to exercise in personam jurisdiction over a nonresident defendant when there exist "certain minimum contacts" between the defendant, the forum state, and the litigation. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790, 797–798 (1984); *Calder v. Jones*, 465 U.S. 783, 788, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804, 811 (1984); *Helicopteros Nacionales de Columbia, S.A. v. Hall, supra*, 466 U.S. at 413–14, 104 S.Ct. at 1872, 80 L.Ed.2d at 411; *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945); *Kenny v. Alexson Equipment Co.*, 495 Pa. 107, 117–118, 432 A.2d 974, 980 (1981); *Slota v. Moorings, Ltd., supra*, 343 Pa.Super. at 102–03, 494 A.2d at 3. This minimum contacts analysis is not susceptible of any talismatic jurisdictional formula;[1] the facts of each case must be weighed in determining whether jurisdiction is proper. *Burger King Corp. v. Rudzewicz, supra*, 471 U.S. at ——, 105 S.Ct. at 2189, 85 L.Ed.2d at 549. Nevertheless, the Supreme Court has provided some broad guidelines which may be applied on a case by case basis to determine the sufficiency of a defendant's contacts with the forum state.

██ Random, fortuitous, or attenuated contacts between a defendant and the forum state will not support an

---

**1.** The rigid three pronged test adopted by this Court in *Proctor & Schwartz, Inc. v. Cleveland Lumber Co.*, 228 Pa.Super. 12, 323 A.2d 11 (1974), was criticized by the Chief Justice of the Supreme Court of Pennsylvania in *Kingsley & Keith (Canada) Ltd. v. Mercer International Corp.*, 500 Pa. 371, 374 n. 1, 456 A.2d 1333, 1335 n. 1 (1983) (affirmance by an equally divided court). In a later decision in *United Farm Bureau Mutual Insurance Co. v. United States Fidelity and Guaranty Co., supra*, six justices, although evenly divided as to the result, adopted the more flexible, minimum contact analysis of jurisdictional due process. Only Justice Nix (now Chief Justice) advocated employment of the three pronged test first adopted by the Superior Court in *Proctor & Schwartz, Inc. v. Cleveland Lumber Co., supra*. By adopting the more flexible, less rigid, "minimum contacts" approach, we give deference to the admonition of the United States Supreme Court that personal jurisdiction may not turn on the application of "mechanical" tests. See: *Burger King Corp. v. Rudzewicz, supra*, 471 U.S. at ——, 105 S.Ct. at 2185, 85 L.Ed.2d at 545; *International Shoe Co. v. Washington, supra*, 326 U.S. at 319, 66 S.Ct. at 159, 90 L.Ed. at 103.

exercise of jurisdiction. *Id.* at ——, 105 S.Ct. at 2183, 85 L.Ed.2d at 542; *Keeton v. Hustler Magazine, Inc., supra,* 465 U.S. at 774, 104 S.Ct. at 1478, 79 L.Ed.2d at 797; *World-Wide Volkswagen Corp. v. Woodson, supra,* 444 U.S. at 299, 100 S.Ct. at 568, 62 L.Ed.2d at 502. Jurisdiction is only proper "where the contacts proximately result from actions by the defendant *himself* which create a 'substantial connection' with the forum State." *Burger King Corp. v. Rudzewicz, supra,* 471 U.S. at ——, 105 S.Ct. at 2184, 85 L.Ed.2d at 542 (emphasis in original). See: *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223, 226 (1957). Unilateral activity in the forum state by others having a relationship with a nonresident defendant cannot satisfy the requirement that a defendant have minimum contacts with the forum state. *Burger King Corp. v. Rudzewicz, supra,* 471 U.S. at ——, 105 S.Ct. at 2183, 85 L.Ed.2d at 542; *Helicopteros Nacionales de Columbia, S.A. v. Hall, supra,* 466 U.S. at 416–17, 104 S.Ct. at 1873, 80 L.Ed.2d at 412; *World-Wide Volkswagen Corp. v. Woodson, supra,* 444 U.S. at 298, 100 S.Ct. at 567, 62 L.Ed.2d at 502; *Slota v. Moorings, Ltd., supra,* 343 U.S. at 102–03, 494 A.2d at 4. Thus, the Due Process Clause has forbidden "the exercise of personal jurisdiction over an out-of-state automobile distributor whose only tie to the forum resulted from a customer's decision to drive there, *World-Wide Volkswagen Corp. v. Woodson, supra* ; over a divorced husband sued for child-support payments whose only affiliation with the forum was created by his former spouse's decision to settle there, *Kulko v. California Superior Court* [436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978) ]; and over a trustee whose only connection with the forum resulted from the settlor's decision to exercise his power of appointment there, *Hanson v. Denkla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)." *Burger King Corp. v. Rudzewicz, supra,* 471 U.S. at —— n. 17, 105 S.Ct. at 2183–2184 n. 17, 85 L.Ed.2d at 542 n. 17. However, if the efforts of a commercial enterprise are "purposefully directed" toward residents of the forum state, the absence of the actor's physical contacts with the forum cannot

defeat an assertion of personal jurisdiction in that state. *Id.* at ——, 105 S.Ct. at 2184, 85 L.Ed.2d at 543. Indeed, even a single act by a foreign defendant within the forum state may support jurisdiction, though that act will not be sufficient if its nature and the quality and the circumstances of its commission create only an "attenuated" affiliation with the forum. *Id.* at —— n. 18, 105 S.Ct. at 2184 n. 18, 85 L.Ed.2d at 543 n. 18.

"Once it has been decided that a defendant purposefully established minimum contacts with the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Id.* at ——, 105 S.Ct. at 2184, 85 L.Ed.2d at 543. Factors to be considered include "'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.'" *Id.* at ——, 105 S.Ct. at 2184, 85 L.Ed.2d at 543, quoting *World-Wide Volkswagen Corp. v. Woodson, supra,* 444 U.S. at 292, 100 S.Ct. at 564, 62 L.Ed.2d at 498.

These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. On the other hand, where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. Most such considerations usually may be accommodated through means short of finding jurisdiction unconstitutional. For example, the potential clash of the forum's law with the "fundamental substantive social policies" of another State may be accommodated through application of the forum's choice-of-law rules. Similarly, a defendant claiming substantial inconvenience

may seek a change of venue. Nevertheless, minimum requirements inherent in the concept of "fair play and substantial justice" may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities.

*Burger King Corp. v. Rudzewicz, supra,* 471 U.S. at ——, 105 S.Ct. at 2184–2185, 85 L.Ed.2d at 543–544 (citations omitted).

 In the instant case, OPEI's only "activity" was the sale of labels to an Ohio manufacturer of lawn mowers. There was no activity whatsoever that was purposefully directed toward residents of Pennsylvania. Indeed, there was only one manufacturer in Pennsylvania who was a member of OPEI, and this manufacturer was not engaged in making walk-behind, power lawn mowers. Even safety standards were not promulgated by OPEI but by an independent organization. The only connection between OPEI's activity as a trade association, i.e., administering the certification program, and the Commonwealth of Pennsylvania was Flymo's fortuitous shipment into this Commonwealth of a lawn mower bearing the OPEI label. This unilateral action of Flymo was insufficient to support jurisdiction over OPEI in Pennsylvania. OPEI *itself* did not sell or distribute lawn mowers, nor did it do any specific act which was sufficient to render it subject to the in personam jurisdiction of the Pennsylvania courts. Given the tenuous relationship between OPEI's out-of-state certification activities and Skinner's injury in Pennsylvania, it seems clear that OPEI could not reasonably have anticipated being haled into court here. We conclude, as did the trial court, that OPEI did not purposefully establish sufficient minimum contacts with Pennsylvania to subject it to specific jurisdiction in this Commonwealth.

Where a cause of action does not arise out of a nonresident defendant's activities within Pennsylvania, jurisdiction may nevertheless be asserted if the defendant's activities within the Commonwealth, though unrelated to the cause of action, are continuous and substantial. *Bork v. Mills, su-*

*pra,* 458 Pa. at 231–232, 329 A.2d at 249; *Slota v. Moorings, Ltd., supra,* 343 U.S. at 104–07, 494 A.2d at 5–6. See: 42 Pa.C.S. § 5301(a)(2)(iii). An examination of decisions in other jurisdictions which have applied this or a similar standard to activities of trade and professional associations is instructive.[2] The continuous and substantial contacts necessary to assert jurisdiction over a trade or professional association may be summarized as follows: (1) a high percentage of the associations' members resided in the

**2.** A few cases involved the question of whether the association's activities were "continuous and substantial" for purposes of determining personal jurisdiction. *See, e.g., Indian Head Inc. v. Allied Tube & Conduit Corp.,* 560 F.Supp. 730, 733 (S.D.N.Y.1983); *Health Care Equalization Committee v. Iowa Medical Society,* 501 F.Supp. 970, 984–986 (S.D.Iowa 1980); *Arnstein v. Manufacturing Chemists Association, Inc.,* 414 F.Supp. 12 (E.D.Pa.1976). Cf. *Bennett v. J.C. Penney,* 603 F.Supp. 1186 (W.D.Mich.1985) (court, in determining whether defendant-association purposefully availed itself of the privilege of acting within the forum state, analyzed the same factors used to determine whether a nonresident defendant's activities are "continuous and substantial"). Other decisions concerned the "transacting business" test under the Clayton Act, 15 U.S.C. § 22, for purposes of determining venue. *See, e.g., Bartholomew v. Virginia Chiropractors Association,* 612 F.2d 812 (4th Cir.1979), *cert. denied,* 446 U.S. 938, 100 S.Ct. 2158, 64 L.Ed.2d 791 (1980); *Golf City, Inc. v. Wilson Sporting Goods Co.,* 555 F.2d 426 (5th Cir.1977); *Indian Head Inc. v. Allied Tube & Conduit Corp., supra* at 730–732; *Sherman College of Straight Chiropractic v. American Chiropractic Association, Inc.,* 534 F.Supp. 438 (N.D.Ga.1982); *ECOS Electronics Corp. v. Daniel Woodhead Co.,* 1982–1 Trade Cas. (CCH) ¶ 64583 (N.D.Ill.1982); *Academy of Ambulatory Foot Surgery v. American Podiatry Association,* 516 F.Supp. 378 (S.D.N.Y.1981); *Health Care Equalization Committee v. Iowa Medical Society, supra* at 980–983; *Bogus v. American Speech & Hearing Association,* 389 F.Supp. 327 (E.D.Pa.1975); *Friends of Animals, Inc. v. American Veterinary Medical Association,* 310 F.Supp. 620 (S.D.N.Y. 1970). Under this test, venue is proper whenever a foreign corporation does business of any *substantial* character. *Eastman Kodak Co. v. Southern Photo Materials Co.,* 273 U.S. 359, 372–373, 47 S.Ct. 400, 403, 71 L.Ed. 684, 688–689 (1927) (emphasis added). Courts have phrased the test in terms of whether the corporation's activities were "continuous," *see Indian Head Inc. v. Allied Tube & Conduit Corp., supra* at 731, or were "occasional," "sporadic," "peripheral," or "isolated," *see Sherman College of Straight Chiropractic v. American Chiropractic Association, Inc., supra* at 444; *Bogus v. American Speech & Hearing Association, supra* at 330. Given the linguistic and conceptual similarity between the "transacting business" and "continuous and substantial" tests, we conclude that cases applying the former standard are relevant to our analysis here. *See Arnstein v. Manufacturing Chemists Association, Inc., supra* at 14.

forum state, *see, e.g., Bennett v. J.C. Penney, supra* note 2 (over fifty members resided in forum state); *Indian Head Inc. v. Allied Tube & Conduit Corp., supra* note 2 (10.6% of membership); *ECOS Electronics Corp. v. Daniel Woodhead Co., supra* note 2 (9% of membership); *Arnstein v. Manufacturing Chemists Association, Inc., supra* note 2 (10% of membership); (2) the associations received substantial income from annual membership dues of members in the forum state, *see, e.g., Bennett v. J.C. Penney, supra* ($40,000); *Indian Head Inc. v. Allied Tube & Conduit Corp., supra* ($39,000); *Arnstein v. Manufacturing Chemists Association, Inc., supra* ($200,000); (3) large sums of money were earned by selling the associations' publications in the forum state, *see, e.g., Indian Head Inc. v. Allied Tube & Conduit Corp., supra* ($483,000 in 1980, $473,000 in 1981); *Sherman College of Straight Chiropractic v. American Chiropractic Association, Inc., supra* note 2 ($2,300); and, perhaps most significantly, (4) the associations held repeated committee meetings and/or educational symposia in the forum state, *see, e.g., Bennett v. J.C. Penney, supra* (meetings held on regular basis); *Indian Head Inc. v. Allied Tube & Conduit Corp., supra* (at least four seminars held in four years); *Sherman College of Straight Chiropractic v. American Chiropractic Association, Inc., supra* (three or four seminars held within five year period); *Health Care Equalization Committee v. Iowa Medical Society, supra* note 2 (American Medical Association appointed Committee on Quackery which had numerous and significant contacts with the forum state); *Arnstein v. Manufacturing Chemists Association, Inc., supra* (four symposia held within a one to two year period); *Bogus v. American Speech & Hearing Association, supra* note 2 (three of fifty-six workshops conducted in one year held in forum state). In those cases in which the trade or professional associations' activities were not deemed substantial, these contacts were not present. *See, e.g., Bartholomew v. Virginia Chiropractors Association, supra* note 2 (only .06% of membership resided in forum, sale of pamphlets, journals, and other educational material generated

very little income, no seminars or workshops held in forum); *Golf City, Inc. v. Wilson Sporting Goods Co., supra* note 2 (association not "transacting business" merely because some of its members resided in forum and received association's publications there); *Academy of Ambulatory Foot Surgery v. American Podiatry Association, supra* note 2 (approximately 4% of membership resided in forum, little revenue from product sales and advertising, no meetings held within forum after 1964); *Health Care Equalization Committee v. Iowa Medical Society, supra* (American College of Radiology had less than 1% of membership in forum); *Friends of Animals, Inc. v. American Veterinary Medical Association, supra* note 2 (.009% of membership resided in forum, sale of publications in forum amounted to only $100, no meetings held in forum after 1963).

In *Arnstein v. Manufacturing Chemists Association, Inc., supra,* the plaintiff filed a wrongful death action in a federal district court in Pennsylvania against Manufacturing Chemists Association, Inc. (MCA), a nonprofit trade association of chemical companies. MCA's activities within the chemical industry had included sponsoring research, conducting committee studies, workshops, and symposia; developing recommended procedures for packaging and handling chemicals; promoting plant safety through incentive programs of annual awards; furnishing educational materials for high school and college chemistry courses; and publishing statistical handbooks, manuals of recommended practice, and safety data sheets. MCA sought to have the action dismissed for lack of jurisdiction. MCA's contacts with Pennsylvania were as follows: (1) ten percent of its members were Pennsylvania corporations, (2) its Pennsylvania members paid dues totalling approximately $200,000 annually, (3) various Pennsylvania residents were employed by member companies to participate in the activities of MCA and its standing committees, (4) approximately four MCA symposia had been held in Pennsylvania, (5) MCA communicated with its Pennsylvania members regarding MCA affairs, and (6) MCA sent various publications into

Pennsylvania. The Federal District Court for the Eastern District of Pennsylvania deemed two of these contacts to be especially significant:

> Given the emphasis upon education and standard-setting, it is reasonable to conclude that the conduct of symposia and committee studies is an important part of MCA's "business." In this context, the holding of four such meetings in Pennsylvania within a fairly limited period looms in importance in demonstrating continuous and substantial contacts with Pennsylvania.
>
> Moreover, when the nature of MCA's membership is taken into account, the fact that 10 percent of its members are citizens of Pennsylvania is also significant. Unlike a business conducted for profit, and to a greater degree than most non-profit enterprises and professional associations, MCA's "business" was with its members. In a sense, its members were its "customers."

*Id.* at 14. The district court, applying Pennsylvania law, determined that MCA's contacts with Pennsylvania were sufficiently continuous and substantial to subject it to in personam jurisdiction.

A contrary conclusion was reached on different facts in *Union National Bank of Pittsburgh v. L.D. Pankey Institute,* 284 Pa.Super. 537, 426 A.2d 624 (1980). There, survival and wrongful death actions had been brought against L.D. Pankey Institute, a nonprofit dental institute. The institute filed preliminary objections raising questions of jurisdiction in which it averred the following facts: "it is a non-profit corporation organized under the laws of Florida; its only business is advanced dental education; it is not qualified to do business in Pennsylvania; has not incurred or paid taxes in this state; has not appointed an agent for service of process in this state; is not listed in any telephone directories in this state; has not filed any reports with any governmental agency in this state; has no assets, offices or any place of business in this state; has no officers, agents, employees, salesmen, representatives, teachers, or professors in this state; and does not ship any

goods into or through this state." *Id.*, 284 Pa.Superior Ct. at 540–541, 426 A.2d at 626. The institute's answers to interrogatories revealed, however, that it had received over $100,000 in tuition from 125 dentists who were enrolled in educational classes held in Pennsylvania. The dentists participating in these programs had not been solicited in their homes or offices by the institute, but had written or called the institute's registrar for information. The answers to interrogatories also indicated that one member of the institute's faculty lived in Pennsylvania, and that the institute purchased approximately $200 worth of goods from Pennsylvania companies.

The Superior Court reversed the order of the trial court dismissing the institute's preliminary objections and held that the institute's activities, although "continuous" by sending informational packets to dentists, were not "substantial." "[E]xcept for sending the packets, and buying slightly over $200 worth of goods," the Court observed, "the institute has done nothing, owns nothing, and is represented by no one, in Pennsylvania." *Id.*, 284 Pa.Superior Ct. at 543, 426 A.2d at 627. The Court concluded that "[i]t would be unfair, and therefore a violation of the Fourteenth Amendment, to subject a defendant to suit not because of what it did but because of what someone else did." *Id.* It was not enough that Pennsylvania dentists had enrolled in the institute's classes.

The case *sub judice* is factually similar both to *Pankey* and to the line of cases in which courts have refused to exercise jurisdiction over trade and professional associations. Like the institute in *Pankey*, OPEI is not incorporated in Pennsylvania and does not maintain any offices here. It is not qualified to do business in this Commonwealth. It has not incurred or paid any taxes in Pennsylvania. It is not listed in any telephone directories in this Commonwealth. It has no officers, agents, employees, salesmen, or representatives in Pennsylvania and ships no goods into this Commonwealth. None of the significant contacts appearing in *Arnstein* and the line of cases uphold-

ing jurisdiction over trade associations were present in this case: the percentage of OPEI members residing in Pennsylvania at the time of Skinner's injury was miniscule, constituting less than two percent of its total membership; OPEI received little income from dues paid by its sole Pennsylvania member, amounting to less than $8,000; its revenue from the sale of informational publications in Pennsylvania was trivial, totalling less than $650 over a two year period; and, most importantly, it held no committee meetings or educational symposia in this Commonwealth. To the extent that these activities of OPEI established a connection with Pennsylvania, that connection was far too tenuous to be deemed "continuous and substantial." Accordingly, OPEI is not subject to general jurisdiction here.

For the foregoing reasons, an attempt to subject OPEI to in personam jurisdiction in the Pennsylvania courts would offend both the Pennsylvania long-arm statute and procedural due process. The trial court properly sustained OPEI's preliminary objections raising questions of jurisdiction.

Order affirmed.