**Patrick GAVIGAN, et al.**

v.

**WALT DISNEY WORLD, INC.**

**Civ. A. No. 85–5008.**

United States District Court,
E.D. Pennsylvania.

Oct. 2, 1986.

Martin J. Silverstein, Philadelphia, Pa., for plaintiff.

James J. Donohue, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

In this diversity action, plaintiffs seek to recover for injuries allegedly sustained in a motor vehicle incident which occurred on June 2, 1984 at the Walt Disney World Complex in Bay Lake, Florida. Plaintiffs are citizens of the Commonwealth of Pennsylvania. Defendant Walt Disney World Co. ("Disney World") is a Delaware Corporation qualified to do business in the state of Florida; its principal business activity consists of the ownership and operation of an entertainment complex known as Walt Disney World, located in Bay Lake, Florida.

This suit was instituted by service of the complaint on August 12, 1985.

On February 10, 1986 I denied defendant's motion to dismiss the suit against them under Fed.R.Civ.P. 12(b)(2) for lack of *in personam* jurisdiction. Defendant has filed a motion for reconsideration or, in the alternative, certification for appeal. I have also requested and received briefing on the question of venue.

This court has indeed been "inundated" with legal memoranda on this matter. After considering the briefs submitted by the parties and the transcript of the hearing before Judge Lord in *Piccinni v. Walt Disney World Co.*, CA No. 85–5620, and for the reasons set forth below and in my original opinion, I find that *in personam* jurisdiction exists over Walt Disney World, Inc. I also find that venue is proper in this court, and decline to transfer this case to another forum.

■ Because this claim arises from activities outside the forum, plaintiffs must establish that defendant's business activities within the Commonwealth of Pennsylvania are so "continuous and substantial" as to make it reasonable for the state to exercise *in personam* jurisdiction. *Bork v. Mills*, 458 Pa. 228, 231–32, 329 A.2d 247, 249 (1974); 42 Pa.Cons.Stat.Ann. § 5301(a)(2)(iii). This requires more than the minimum contacts necessary for specific jurisdiction. *Reliance Steel Products v. Watson, Ess, Marshall and Engass*, 675 F.2d 587, 588–89 (3d Cir.1982). Whether this standard has been met must be decided on a case-by-case basis. I find that it is satisfied by the facts in this case.

■ I note initially that defendant argues that, because jurisdiction must exist at the time the lawsuit is instituted, I may only look at evidence which predates the institution of the lawsuit. If the only evidence before me was of activity occurring after August 12, 1985 it would clearly be insufficient. However, the later advertisements (and the toll free number contained in them) make up one small part of an ongoing pattern which began well before

this suit was initiated, and which provides the basis for jurisdiction. There is ample evidence, both before and after the service of process, to show defendant's "continuous and substantial" business activities in Pennsylvania. The evidence shows that a representative of Walt Disney World contacted the City of Philadelphia in January, 1985 and a proposed promotion of Disney World in the Philadelphia area designed to encourage a steady stream of visitors to the Florida facility. This proposal was initiated by Disney World through its marketing representative, Bonnie Johnson. In connection with the "Disney Salutes Philadelphia" campaign, a representative of the city spent two days at Disney World, at defendant's expense. Disney World's chef participated in the "Book and Cook" festival in Philadelphia in March 1985 in conjunction with the Adam's Mark Hotel. Also in March, Disney World, through its emissary Mickey Mouse, presented the Mayor of Philadelphia with honorary Disney World citizenship. Defendant sought and received the cooperation of the City of Philadelphia and the Adam's Mark Hotel in its promotional campaign.

On May 15, 1985 Disney World entered into an agreement with the John Wanamaker store resulting in an exhibit at the store from May 25 to June 2, 1985. It was said to be mutually beneficial to the parties to cooperate in a "Walt Disney World Days at John Wanamaker" promotional campaign. The materials used in that exhibit were provided by Disney World. As part of that exhibit, Disney World apparently maintained an information booth at the store to provide information on visits to the entertainment complex.

In addition, plaintiffs have submitted copies of the advertising records of the local CBS affiliate.[1] These records indicate that numerous advertising spots were aired between February and June 1985, and again in the fall of 1985. The "customer" listed on the CBS contracts and invoices is "Walt Disney Prod." However, the "product" is clearly noted as "Walt Disney World" and, later, "Spring Campaign," and "Fall Campaign." It is clear to me that these advertisements, while they may have been paid for by the parent company, were for the benefit of the defendant, Walt Disney World.[2]

Thus I find that there is ample evidence of an ongoing promotional campaign conducted by the defendant which began more than six months before the initiation of this suit, and continued beyond it. This campaign was specifically directed at the Philadelphia market.

Defendant argues repeatedly that most of the advertising for the Disney World entertainment complex is initiated and paid for by licensees of Walt Disney World, such as Eastern Airlines. However, the promotional campaign described above was initiated by Disney World through its employee, Bonnie Johnson. Similarly, it was Disney World which entered into the agreement with John Wanamaker.

■ Moreover, while Walt Disney Productions is listed as the customer in the advertising records of the CBS affiliate, the ads were clearly intended to attract visitors to the Disney World complex. As I stated in my original opinion, in the eyes of the public there is no distinction to be drawn as to who paid for the ad. The product being advertised was the defendant's.[3] Similarly, the activities of Walt Dis-

1. The transcript of the hearing before Judge Lord indicates that the defendant had stipulated to these exhibits, although they were not formally introduced in evidence. They have come before me as Exhibit 3 of plaintiffs' supplemental memorandum pursuant to the court's order of April 21, 1986.

2. I find it reasonable to infer that the two month gap in advertising during the summer of 1985 is due to the timing of promotional cam-

paigns. Business activities may be continuous without being constant.

3. The company itself apparently makes no distinction. The 1985 Annual Report notes that "Walt Disney World aggressively promoted outside Florida for the first time, launching a two-month television advertising campaign in 51 key Midwest and Northeast markets in February." Walt Disney Productions 1985 Annual Report at 4.

ney Travel Company, a sister company of the defendant, are geared towards enticing Pennsylvania citizens to the Disney World complex. Were these services not provided by the defendant's parent and sister corporations, the defendant would surely either have performed the services itself, or paid commissions to other agents to do so.[4] These business activities of Walt Disney Productions and Walt Disney Travel may therefore be considered in determining whether *in personam* jurisdiction exists. *See Gelfand v. Tanner Motor Tours, Ltd.,* 385 F.2d 116 (2d Cir.1967), *cert. denied* 390 U.S. 996, 88 S.Ct. 1198, 20 L.Ed.2d 95 (1967).[5] Defendant could reasonably expect to be "haled into court" in Pennsylvania. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490; *Kimball v. Schwartz,* 580 F.Supp. 582, 586 (W.D.Pa.1984); *Hewitt v. Eichelman's Subaru, Inc.,* 341 Pa.Super. 589, 593, 492 A.2d 23, 26 (1985).

Defendant next argues that advertising alone cannot be sufficient to support jurisdiction. That this is incorrect is readily apparent from a reading of *Slota v. The Moorings, Ltd.,* 343 Pa.Super. 96, 494 A.2d 1 (1985), in which the court recognized that advertising of a certain quantity and quality would make it reasonable to exercise jurisdiction over an out-of-state defendant.

Defendant argues that it has never paid commissions to travel agents, and that its advertising in Pennsylvania has been "extremely limited." It asserts that this "pales in comparison" to the facts of other cases in which no jurisdiction was found. I am simply not persuaded by this argument. Defendant argues that its contacts with

Pennsylvania are far less than those which were held insufficient to impose jurisdiction in *Slota.* I disagree. The Moorings, Ltd. was a British Virgin Islands hotel. The plaintiff argued that *in personam* jurisdiction existed because the plaintiff had signed the contract (for hotel accommodations) in Pennsylvania and had sent the defendant a check drawn on a Pennsylvania bank. The court emphasized that the unilateral acts of the plaintiff could not confer jurisdiction over a defendant which had itself done nothing to avail itself of the privilege of acting within the Commonwealth. 343 Pa.Super. at 103, 494 A.2d at 4. In the present case, the promotional campaign was initiated by Disney World in order to attract Pennsylvania residents to its entertainment complex. To this end, defendant actively sought out the assistance and cooperation of the City of Philadelphia and Philadelphia businesses. Its representatives travelled to Philadelphia to further the promotional campaign.

The most important distinction is that in contrast to *The Moorings,* which the court noted had not purchased any advertising space in media directed to the Philadelphia market, there is evidence that Disney advertised with the local CBS television affiliate as well as in the local print media. This is a crucial factor, for it is precisely this lack of local advertising which courts have emphasized in finding that the quality and quantity of advertising were insufficient. *See Gehling v. St. George's School of Medicine, Ltd.,* 773 F.2d 539 (3rd Cir. 1985); *Slota v. The Moorings,* 343 Pa.Super. at 108, 494 A.2d at 6.[6]

---

**4.** "Disney is a complex and sophisticated company. Its success is dependent not on the strength of any one particular business unit, but on the interaction and support of diverse business units on one another." Walt Disney Productions 1985 Annual Report at 1.

**5.** This is so, not because the corporations are alter egos or because of the similarity in names, but because Walt Disney World acted through the related corporation in order to conduct its necessary business in Pennsylvania. I do not suggest that Disney World may be subjected to jurisdiction in Pennsylvania merely because Dis-

ney films are shown here. But defendant cannot, on the one hand, rely on the fact that it does not pay travel agent's commissions in Pennsylvania, and on the other hand argue that its relationship with Disney Travel is irrelevant.

**6.** In *Whalen v. Walt Disney World, Inc.,* 274 Pa.Super. 246, 418 A.2d 389 (1980), the court specifically noted that the plaintiffs had failed to prove any contacts beyond the purchase of merchandise and insurance from Pennsylvania corporations. In holding that there was no jurisdiction over Disney World, the court refused to consider plaintiff's allegations of widespread

Defendant argues vehemently that it has never before been held subject to the *in personam* jurisdiction of a Pennsylvania court. The cases cited by defendant were distinguishable for the reasons noted in my original opinion, and I see no need to reiterate those distinctions here. Defendant has raised the additional precedent of *Tansky v. Walt Disney World Co.*, 538 F.2d 320 (3d Cir.1976). I note that this case was a 1976 case, decided without opinion. The question of whether there exist continuous and substantial business activities is one which must be decided on a case-by-case basis. The activities of the defendant in Pennsylvania may have changed substantially over the past decade. I cannot be bound by a decision more than ten years old which provides no facts on which to base a comparison.[7]

Defendant has made a number of visits to the Commonwealth, has entered into joint ventures with at least two Pennsylvania ventures, has sought and received the cooperation of the City of Philadelphia in its promotional campaign, and advertised in media directed specifically to the local Philadelphia market. This is ample evidence of continuous and substantial business activity such as to make it reasonable to exercise jurisdiction. *Bucks County Playhouse v. Bradshaw*, 577 F.Supp. 1203, 1207 (E.D.Pa. 1983). I see no need to certify this question to the Court of Appeals.

■ There remains only the question of venue. There is no question but that venue is proper under 28 U.S.C. § 1391. The issue is whether I should exercise my discretion under 28 U.S.C. § 1404 to transfer this case to a Delaware or Florida court.[8]

The burden is on the moving party to establish that the convenience of the parties and witnesses and the interest of justice require a change of venue. A plaintiff's choice of forum will not be lightly

disturbed. Unless the balance of convenience of the parties is strongly in favor of the defendant, a change of venue should not be granted. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3rd Cir.1970), *cert. denied* 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971).

Defendant argues that a number of potential eyewitnesses to this accident are Florida residents. Plaintiffs, on the other hand, will present medical testimony from a number of witnesses located in Pennsylvania. Wherever this action is tried, one party will have to produce out-of-state witnesses. In addition, I note that plaintiffs have also filed suit against the manufacturers of the bus and wheelchair involved in this accident. It is not clear that the wheelchair manufacturer, Amigo Sales, Inc., would be subject to suit in either Florida or Delaware.

Because defendant has not persuaded me that the convenience of the parties and witnesses or the interests of justice require that plaintiffs' choice of forum be disturbed, I will decline to grant a change of venue.

An appropriate order follows.

### ORDER

Upon consideration of defendant's motion for reconsideration or certification, the plaintiffs' answer, the various memoranda of law submitted by the parties, the evidence presented in this case and in *Piccinni v. Walt Disney World Co.*, CA No. 85–5620, and for the reasons stated in the attached memorandum opinion, IT IS ORDERED that:

1. Upon reconsideration of defendant's motion to dismiss for lack of *in personam* jurisdiction, the motion is DENIED;

---

advertising in the Philadelphia market. 274 Pa. Super. at 252, 418 A.2d at 392.

7. Nor am I bound by unreported cases from courts in this district, particularly where defendant has not shown that jurisdictional facts such as those present in this case were plead.

8. Since there is no reason to believe that Delaware would be any more convenient a forum than Pennsylvania, I will treat this as a choice between the Pennsylvania and Florida courts.

2. Defendant's motion for certification of this issue to the court of appeals is DENIED;

3. The request for a change of venue under 28 U.S.C. § 1404 is DENIED.