462 A.2d 1300

**UNITED FARM BUREAU MUTUAL INSURANCE COMPANY, a mutual insurance company, Appellant-Defendant,**

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY, Appellee-Plaintiff,**

**and**

**Loran Palmer, Brenda Palmer, Regina Palmer and Ryan Palmer, by their parents and natural guardians, Loran and Brenda Palmer, and Harrington & Schweers, P.A., Appellees-Defendants.**

Supreme Court of Pennsylvania.

Argued March 8, 1983.

Decided July 18, 1983.

David P. Helwig, Sharlock, Repcheck, Engel & Mahler, Gary F. Sharlock, Pittsburgh, for appellant.

Dennis C. Harrington, Harrington & Schweers, Pittsburgh, for Loran Palmer, et al.

Richard S. Dorfzaun, Pittsburgh, for U.S. Fidelity and Guar. Co.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice:

■ This case presents a single question: does Pennsylvania have the minimal contacts due process requires to exercise personal jurisdiction over a non-resident liability carrier in a suit brought by a Pennsylvania no-fault assigned risk carrier? In this suit for a declaratory judgment the local no-fault carrier asserts the non-resident liability carrier is responsible for Pennsylvania no-fault benefits arguably due the foreign carrier's insureds.[1]

The insureds' claim to Pennsylvania no-fault benefits resulted from an auto accident in Pennsylvania. The claimants reside in the same state as the liability carrier. That state does not provide no-fault benefits. Their liability carrier is not authorized to do business in Pennsylvania, but did contract to indemnify its insureds against liability to the extent required by the financial responsibility laws of any state, including Pennsylvania.

Under these circumstances we hold the insureds' Indiana liability carrier is not subject to direct action in Pennsylvania for Pennsylvania no-fault benefits. Specifically, we determine that appellant, an Indiana insurance company, does not have contacts with Pennsylvania of a quantity and quality sufficient for a Pennsylvania court to assert jurisdiction within the limits set by the due process clause of the Fourteenth Amendment.

1. Pennsylvania No-Fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. § 1009.101 *et seq.* (Supp.1982) (hereinafter the No-Fault Act).

This Court does not believe a carrier who promises to indemnify and provide a defense against liability could reasonably foresee that those obligations would subject it to direct action for foreign no-fault benefits. *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Here the foreign company's only contact with Pennsylvania is an automobile accident involving its insureds under a liability insurance policy. That policy contains nothing more than a provision for compliance with state financial responsibility laws. By itself, that contact is insufficient to confer jurisdiction in a declaratory judgment action brought by a Pennsylvania no-fault assigned risk carrier where the fundamental nature of the action requires determination of the contractual obligations of a foreign insurer to a foreign insured under an insurance contract executed in a foreign state. By promising to indemnify its insured in accord with the minimum requirements of financial responsibility laws the foreign insurer could not anticipate being haled into court in a sister state to litigate whether it is obligated to provide that state's no-fault benefits to its insureds. To hold otherwise would permit a state to impose its no-fault policy on a foreign carrier domiciled in a state which does not provide no-fault coverage for auto accidents involving its residents.

## I

On March 26, 1976, the Palmer family was involved in an automobile accident on Interstate Route 80 in Mercer County, Pennsylvania.[2] At the time of the accident they were residents of Jeffersonville, Indiana. They have remained

---

2. While the record in the present case is unclear, it appears that the accident involved a collision between the Palmer vehicle and a tractor-trailer owned by Spector Motor Freight. Palmer was driving behind a truck in the right lane and, after clearing certain traffic barriers set up at a construction site, he pulled into the left lane to pass the truck. The Spector Motor Freight Truck was travelling in the same lane but in an opposite direction, and collided with the Palmer vehicle. *See Palmer v. Penn-Ohio Road Materials, Inc.,* 470 F.Supp. 1199 (W.D.Pa.1979), holding that the Eleventh Amendment did not bar suit against PennDOT employees at the construction site.

Indiana residents to the present. Four members of the family sustained injuries in the accident. The fifth victim, Loran Palmer's mother-in-law, was killed. The four injured members of the family, including the driver, filed claims for no-fault benefits under the Assigned Claims Plan of the Pennsylvania No-Fault Act.[3] In accordance with the Assigned Claims Plan, 40 P.S. § 1009.108, United States Fidelity and Guarantee Company (hereinafter U.S.F. & G.), a carrier authorized to write automobile insurance policies in Pennsylvania, was assigned to administer appellees' claims. U.S.F. & G. refused to pay no-fault benefits and asserted that any benefits to which appellees were entitled were owed by United Farm Bureau Mutual Insurance Company (hereinafter United Farm), an Indiana insurance company, which had issued a liability policy to Loran Palmer in Indiana.

The Palmers filed an action in assumpsit against U.S.F. & G. to recover Pennsylvania no-fault benefits.[4] U.S.F. & G. then filed a Petition for Declaratory Judgment seeking a determination that under the terms of the policy issued to Loran Palmer by United Farm and the provisions of the No-Fault Act, any amounts payable to the Palmers are owed by United Farm or, in the alternative, benefits under the No-Fault Act are not owed to the Palmers.[5]

United Farm filed preliminary objections asserting lack of personal jurisdiction and *forum non conveniens*.[6] For purposes of this appeal from the dismissal of its objections we must assume United Farm's factual averments are true.

3. On a basis not clearly set forth in appellee U.S.F. & G.'s petition for declaratory judgment, the Palmers' no-fault counsel, Harrington & Schweers, P.A., was named a party. Thus, this law firm is also an appellee.

4. The action was brought in Allegheny County Common Pleas, where both U.S.F. & G. and Harrington & Schweers are located.

5. A similar declaratory judgment action by U.S.F. & G. is currently pending in the United States District Court for the Southern District of Indiana. That proceeding has been stayed pending our resolution of this appeal.

6. The *forum non conveniens* claim was not pursued in this appeal.

Thus, we know United Farm is a mutual insurance company incorporated and licensed in the state of Indiana and does business exclusively in that state. It is not incorporated under the laws of Pennsylvania or qualified as a foreign corporation in Pennsylvania. United Farm has no offices or agents in Pennsylvania, nor has it authorized its agents to transact business in the Commonwealth. It has never consented to the exercise of jurisdiction by the courts of Pennsylvania. Based on these facts United Farm contends that it has never contracted to insure any person, property or risk located within the Commonwealth of Pennsylvania. *See* 42 Pa.C.S.A. § 5322(a)(6)(i).

As stated, United Farm's preliminary objections were dismissed. Upon motion by counsel for United Farm, the order dismissing the preliminary objections was amended to state that the preliminary objections raised a substantial issue of jurisdiction. On appeal[7] Superior Court affirmed. *United States Fidelity and Guaranty Co. v. United Farm Bureau Mutual Insurance Co.*, 297 Pa.Superior Ct. 25, 443 A.2d 280 (1981). Since the case presents an important question of first impression in connection with the administration of Pennsylvania's system of no-fault benefits, we granted review. *See* Pa.R.A.P. 1114.

## II

Under our No-Fault Act, "any victim or any survivor of a deceased victim is entitled to receive basic loss benefits in accordance with the provisions of this act" if the accident causing injury occurs in Pennsylvania. 40 P.S. § 1009.201 (Supp.1982).[8] The basic loss benefits available to the victim

7. Appeal was taken pursuant to 42 Pa.C.S.A. § 5105(c) and Pa.R.A.P. 311(b)(2) permitting interlocutory appeals when a court states in its order that the case presents a substantial issue of jurisdiction.

8. "Basic loss benefits" are defined as follows:
   benefits provided in accordance with this act for the net loss sustained by a victim, subject to any applicable limitations, exclusions, deductibles, waiting periods, disqualifications, or other terms or conditions provided or authorized in accordance with this act. Basic loss benefits do not include benefits for damage to property.

are determined by the no-fault plan in effect in the state of domicile of the victim or if there is no such plan, the plan in effect in the state in which the accident occurred. 40 P.S. § 1009.110(c)(1) (Supp.1982). Indiana does not have a no-fault plan. Thus, Pennsylvania's no-fault plan applies. For individuals who do not possess insurance providing basic loss benefits, the No-Fault Act provides an Assigned Claims Plan. 40 P.S. § 1009.108 (Supp.1982). U.S.F. & G. says it is entitled to have Pennsylvania determine the question of whether such an Indiana policy provides Pennsylvania no-fault benefits. Under the Pennsylvania No-Fault Plan victims may obtain basic loss benefits by filing a claim with the Assigned Claims Bureau and having their claim handled by an assigned risk carrier.[9] We should construe this provision consonant with the Pennsylvania legislature's avowed purpose of providing basic loss benefits quickly, cheaply and with a minimum of litigation. 40 P.S. § 1009.102. In this connection we note U.S.F. & G.'s refusal to provide benefits until its responsibility *vis a vis* an out of state liability carrier is judicially declared has left the Palmers without a determination of their entitlement.

The Palmers' policy with United Farm provided liability coverage for bodily injury and property damage. It applied to "accidents, occurrences, and loss during the policy period and while the automobile is within the United States of America, its territories or possessions, or Canada, or between parts thereof." The policy also provided that it

> Nor do basic loss benefits include benefits for net loss sustained by an operator or passenger of a motorcycle.
> 40 P.S. § 1009.103. "Net loss" means "loss less benefits or advantages required to be subtracted from loss in calculating net loss pursuant to this act." *Id.* "Loss" means
>> accrued economic detriment resulting from injury arising out of the maintenance or use of a motor vehicle consisting of, and limited to, allowable expense, work loss, replacement services loss, and survivor's loss.
> *Id.*

**9.** Under the Assigned Claims Plan all insurance companies providing basic loss benefits in Pennsylvania participate in the Bureau and are assigned claims.

shall comply with the motor vehicle financial responsibility laws of any state or province which shall be applicable with respect to any such liability arising out of the ownership, maintenance or use of an automobile insured hereunder, to the extent of the coverage and limits of liability required by such law.

The insured agreed to reimburse the company for any payments made by the company which it would not have been obligated to make but for complying with a state's financial responsibility laws. The Palmers' policy is a liability policy, not a no-fault policy, and has no provision for basic loss benefits,[10] as that term is defined by Pennsylvania.

■ U.S.F. & G. asserts that the provisions of our No-Fault Act, taken with the terms of the Palmers' policy with United Farm, insulate it from responsibility to the Palmers for no-fault benefits under our Assigned Claims Plan. In this action for a declaratory judgment we are not called upon to determine which company is liable to the Palmers for no-fault benefits, or whether the Palmers are entitled to no-fault benefits at all. We must determine only whether personal jurisdiction, consistent with the due process clause of the Fourteenth Amendment, may be exercised over United Farm in U.S.F. & G.'s action for declaratory judgment.[11]

10. As noted, Indiana, the domiciliary state, does not have a no-fault statute.

11. U.S.F. & G. argues that Pennsylvania's determination on personal jurisdiction requires a holding that the "financial responsibility" provisions of this policy do not include a promise to provide no-fault benefits and that therefore a Pennsylvania determination of no jurisdiction would be *res judicata* on the merits of this respective carrier's responsibility in an Indiana forum, thus depriving U.S.F. & G. of any forum in which to litigate the merits. We do not agree. Our holding of no jurisdiction is based on a determination that the policy of the Pennsylvania No-Fault Act to provide speedy inexpensive payment of basic loss benefits is best met by requiring the Pennsylvania assigned risk carrier to pay all victims of Pennsylvania accidents when their own carrier has refused and then litigate the responsibility, as between carriers, for those benefits in any appropriate forum. That forum will make its own policy determination on the issue, a determination which may differ from ours. Such differences are inherent in a federal system in which Congress has thus far left to each state the determination of the extent, if at all, to which no-fault

III

Common Pleas based its finding of jurisdiction on its interpretation of 42 Pa.C.S.A. § 5322(a)(6)(i) and 42 Pa.C. S.A. § 5322(b),[12] as well as its application of the "minimum contacts test" to the facts of this case. Section 5322(a)(6) provides in relevant part:

(a) General rule—A tribunal of this Commonwealth may exercise personal jurisdiction over a person ... who acts directly or by an agent as to a cause of action or other matter arising from such person: ...

(6)(i) contracting to insure any person, property or risk located within this Commonwealth at the time of contracting:

.      .      .      .      .

Section 5322(b) provides:

(b) Exercise of full constitutional power over nonresidents—In addition to the provisions of subsection (a) the jurisdiction of the tribunals of this Commonwealth shall extend to all persons who are not within the scope of Section 5301 (relating to persons)[13] to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States.

benefits shall be provided. Thus, the Pennsylvania statute requires U.S.F. & G., as the assigned risk carrier, to pay when the victim's own carrier has refused. Section 1009.108(a)(1)(E).

12. Common Pleas refused to find jurisdiction based on either 42 Pa.C.S.A. §.5322(a)(2) (contracting to supply services or things in the Commonwealth) or 42 Pa.C.S.A. § 5322(a)(4) (causing harm or tortious injury in the Commonwealth by an act or omission outside the Commonwealth). In these respects it was correct.

13. 42 Pa.C.S.A. § 5301 deals with jurisdiction over all persons, including corporations. Jurisdiction over corporations can be exercised if the corporation is incorporated or qualifies as a foreign corporation under the laws of Pennsylvania, or has consented to the exercise of jurisdiction, or carries on a continuous and systematic part of its general business within the Commonwealth. Both parties, and the courts below, agree that none of these bases for jurisdiction apply to United Farm.

While conceding that United Farm's contacts with Pennsylvania "are indeed tenuous" (Common Pleas Slip Op. at 4), Common Pleas nevertheless predicated jurisdiction on the phrase "contracting to insure any person, property or risk located within this Commonwealth at the time of contracting," (42 Pa.C.S.A. § 5322(a)(6)(i)). The Superior Court affirmed, citing *Proctor & Schwartz, Inc. v. Cleveland Lumber Co.,* 228 Pa.Superior Ct. 12, 323 A.2d 11 (1974) and *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). It held that by issuing the policy to Loran Palmer, United Farm had "purposefully availed itself of the privilege of acting within the Commonwealth" and could "reasonably anticipate being haled into court" in Pennsylvania.

For the reasons which follow, we hold that United Farm did not purposefully avail itself of the privilege of acting within Pennsylvania, nor did it pursue activities within the state in such a way as to reasonably anticipate being haled into court here. Thus the "minimum contacts" test is not met on the facts of this case, and the assertion of jurisdiction by Pennsylvania courts is precluded by the due process clause of the Fourteenth Amendment to the United States Constitution.

## IV

The United States Supreme Court most recently addressed the "minimum contacts" test and due process limitations on the exercise of state court jurisdiction over non-resident corporate defendants in *World-Wide Volkswagen Corp. v. Woodson, supra.* See Annot., 62 L.Ed.2d 853. *World-Wide Volkswagen* reaffirmed the "minimum contacts" test first enunciated in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), but as developed by intervening cases. *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *Kulko v. California Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). *Shaffer* made clear that the "minimum contacts"

test is the measure of "all assertions of state-court jurisdiction." 433 U.S. at 212, 97 S.Ct. at 2584. Those "minimum contacts" involve the connections between the defendant, the forum and the litigation. *Id.* at 207, 97 S.Ct. at 2581.

*World-Wide Volkswagen* clarified the policy concerns which underly the "minimum contacts" test:

It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to insure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system.

444 U.S. at 292, 100 S.Ct. at 564. The concern for preventing inconvenient litigation, referred to in terms of "reasonableness" or "fairness," requires that the

defendant's contacts with the forum State must be such that maintenance of the suit "does not offend 'traditional notions of fair play and substantial justice'" *International Shoe Co. v. Washington, supra* [326 U.S.] at 316 [66 S.Ct. at 158] quoting *Milliken v. Meyer,* 311 U.S. 457, 463 [61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)].

*Id.* The policy of preserving interstate federalism, while subject to the rapid developments of communication and transportation, still holds state boundaries relevant for purposes of determining jurisdiction and recognizes that the "sovereignty of each state, in turn, implie[s] a limitation on the sovereignty of all of its sister states" *Id.* 444 U.S. at 293, 100 S.Ct. at 565. The importance of interstate federalism as a policy advanced by the "minimum contacts" test was forcefully stated in *World-Wide Volkswagen:*

Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunal of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of power to render a valid judgment. *Hanson v. Denckla, supra* [357 U.S.] at 251 [78 S.Ct. at 1238].

444 U.S. at 294, 100 S.Ct. at 565–566. Lastly, *World-Wide Volkswagen,* while recognizing the relevance of foreseeability of suit by aggrieved parties in the forum state as a factor in due process analysis, reiterated that foreseeability alone has never been a sufficient benchmark for personal jurisdiction, and that the required foreseeability is

> not the mere likelihood that a product will find its way to a forum State. Rather it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.

444 U.S. at 297, 100 S.Ct. at 567. This "foreseeability" relates to a corporation's "purposefully avail[ing] itself of the privilege of conducting activities within the forum state," *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958) so that a defendant has "clear notice that it is subject to suit there" and can "structure [its] primary conduct with some minimum assurance as to where that conduct will and will not render [it] liable to suit." 444 U.S. at 297, 100 S.Ct. at 567. United Farm did not purposely avail itself of the privilege of writing no-fault auto insurance in Pennsylvania or elsewhere. It wrote only a liability policy for residents of a state which does not have no-fault. We do not believe that by promising to indemnify against liability appellant could reasonably foresee such a promise would subject it to direct action in Pennsylvania on a no-fault theory.

Whether its promise to comply with the financial responsibility laws of all states was so misleading to its Indiana promisees that they should be entitled to recover, on a theory of estoppel or otherwise, and thus that they have rights to which the Pennsylvania assigned risk carrier can be subrogated is best determined in an Indiana court, if our public policy of providing quick and certain basic loss benefits is to be fostered.

We analyzed these standards for determining whether "minimum contacts" exist and what due process limitations must be placed on our "long arm" statute in *Kenny v. Alexson Equipment Co.,* 495 Pa. 107, 432 A.2d 974 (1981)

(plurality opinion).[14] In applying these standards we must bear in mind that *World-Wide Volkswagen* and *Kenny* involved products liability suits, not suits on an insurance contract, and that the "minimum contacts" test "is not susceptible of mechanical application [but requires that] the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present." *Kulko v. Superior Court,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978).

## V

U.S.F. & G. urges us to adopt Common Pleas' definition of "risk", i.e., "the chance of loss or perils to the subject matter of an insurance contract" (Common Pleas Slip Op. at 5–6). Such a definition, it argues, brings this case within the test of 42 Pa.C.S.A. § 5322(a)(6)(i).[15] However, we have already

**14.** This Court most recently addressed these policy concerns in *Kingsley & Keith (Canada) Ltd. v. Mercer International Corp.,* 500 Pa. 371, 456 A.2d 1333 (1983). An equally divided Court let stand a dismissal of preliminary objections to jurisdiction filed by a Canadian trucking company sued for breach of contract of delivery. Personal jurisdiction was asserted against the Canadian firm based on its alleged negligent performance of part of its contract while in Pennsylvania.

The Opinion in Support of Affirmance pointed to the reasonableness of asserting jurisdiction on the facts of the case. The Opinion in Support of Reversal found that the facts did not show an adequate connection between the defendant's activities and the cause of action. Under either analysis, there would be no jurisdiction in the instant case.

Furthermore, a reasonable interpretation of the United States Supreme Court's doctrinal development in this area indicates that the "minimum contacts" test of *International Shoe* (contacts between defendant forum and litigation) remains valid under *World-Wide Volkswagen* as a threshold test, with the reasonableness of any assertion of jurisdiction measured against the policy concerns of fairness to the defendant and federalism which underly the "minimum contacts" standard. *See* Ripple and Murphy, *World-Wide Volkswagen Corp. v. Woodson: Reflections on the Road Ahead,* 56 Notre Dame Law. 65 (1980).

**15.** This argument implies that the general basis of jurisdiction in our "long arm" statute can only be expansive of its specific bases. 42 Pa.C.S.A. § 5322(b). However, the general basis is also limiting in the sense that it is defined by the Fourteenth Amendment's Due Process Clause and the decisions of the United States Supreme Court

adopted a definition of the term "risk" which includes both the general definition argued by U.S.F. & G. and the more specific, colloquial definition—"the specific house, factory, ship, etc., covered by the policy"—which United Farm urges us to adopt. In *Miller v. Boston Insurance Co.*, 420 Pa. 566, 218 A.2d 275 (1966), a case involving an "all risks" insurance policy, we adopted the definition of "risk" found in Black's Law Dictionary:

> "In insurance law; the danger or hazard of a loss of the property insured, the casualty contemplated in a contract of insurance; the degree of hazard; a specified contingency or peril; and, colloquially, the specific house, factory, ship, etc., covered by the policy."

420 Pa. at 571–572, 218 A.2d at 277. The respective definitions urged upon us are not mutually exclusive. It seems reasonable to assume that United Farm has contracted to insure the "chance of loss" to a "specific" car, belonging to appellees, which would seem to constitute "a specified . . . peril".

Assuming United Farm under its liability policy insured a risk located within this Commonwealth when it issued the policy, nevertheless the risk was limited by its promises to defend its insureds and indemnify them in suits against the insureds, not itself, for damages arising out of the insureds' liability for claims for bodily injury or damage to property incurred in accidents involving the specifically insured car. Thus, it insured only the risk of paying those sums which its insureds become obligated to pay. Such a promise to defend and pay judgments does indeed extend to the entire United States, with the requirement that financial responsibility laws be complied with. The policy does not, however, require United Farm to submit itself to the jurisdiction of a foreign state as a defendant in its own person. The policy does not require United Farm to submit to the jurisdiction of Pennsylvania courts nor does the policy provide a sufficient "affiliating circumstance" with this Commonwealth to

interpreting that Amendment's effect on personal jurisdiction of state courts.

permit personal jurisdiction over United Farm under either 42 Pa.C.S.A. § 5322(a)(6)(i) or 42 Pa.C.S.A. § 5322(b) (the "long arm" statute).[16]

Having no formal contacts with Pennsylvania, United Farm can at best be held to have foreseen the possibility of suit against the Palmers in our courts, and thus to reasonably expect to be brought into court here to defend them. Although traditional notions of fair play and due process would not be offended by requiring United Farm to defend the Palmers in our courts, we cannot uphold personal jurisdiction over United Farm in the present declaratory judgment action. Because of the extremely tenuous contact United Farm has with this Commonwealth and our duty to uphold the concerns of interstate federalism enunciated in *World-Wide Volkswagen,* we conclude that the reach of our long-arm statute cannot, consistent with the Due Process Clause of the Fourteenth Amendment, be extended to United Farm in this case. In particular, we note that the policies inherent in federalism would not permit our legislature to require a totally foreign insurance company, such as United Farm, to provide no-fault insurance to its policyholders. *A fortiori,* the courts of this Commonwealth cannot require such action, a requirement which would be implicit in our upholding jurisdiction in cases such as this.

The order of Superior Court is reversed and the case remanded to Allegheny County Common Pleas for proceedings consistent with this opinion.

NIX, J., files a concurring opinion.

McDERMOTT, J., files a dissenting opinion in which LARSEN and ZAPPALA, JJ., join.

**16.** *Compare McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), which upheld California's assertion of jurisdiction over a non-resident life insurance company whose only activity in California concerned the life insurance contract at issue.

NIX, Justice, concurring.

Since I agree with the majority's analysis and conclusion that United Farm did not purposefully avail itself of the privilege of acting within the forum state, thus invoking the benefits and protections of its laws, I join in the opinion. I do believe it is important, however, to reiterate the wisdom in employing the three-pronged test in assessing the due process concerns. *See Kingsley and Keith (Canada) Ltd. v. Mercer International Corporation,* 500 Pa. 371, 456 A.2d 1333, 1335 (1983) (Opinion in Support of Reversal). Here as was the case in *Kenny v. Alexson Equipment Company,* 495 Pa. 107, 432 A.2d 974 (1981), because of the failure to satisfy the first prong of the test, it is unnecessary to consider or discuss the remaining considerations.

McDERMOTT, Justice, dissenting.

I acknowledge that finding *in personam* jurisdiction in this case is difficult under the "minimum contacts" standard, especially in light of the Supreme Court's recent decision in *Worldwide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). However, I would approach this case in the manner advocated by Justice Brennan in his dissenting opinion in *Worldwide Volkswagen,* to wit: take a broader view of the concept of *in personam* jurisdiction and focus not merely on "contacts, but on whether the particular exercise of jurisdiction offends 'traditional notions of fair play and substantial justice.' (citations omitted)." *Id.* 444 U.S. at 300, 100 S.Ct. at 581.

This is not a situation where an individual is being "haled" into a foreign jurisdiction to defend a case which he had no reason to suspect would ever arise. *See, e.g. Kulko v. Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). Rather, this case involves an insurance company, experienced in defending lawsuits, which accepted premiums under a policy forming the basis of the claimants' suit, and which would have been contractually required to defend the claimants in a Pennsylvania Court had a liability suit been brought against them. That company now seeks to hide

behind a litmus paper curtain of "contacts", contending that it would be unfair to require them to litigate the present question in Pennsylvania. In my view, what is unfair is to require a Pennsylvania carrier, not a party to the insurance contract and which never received any premiums, to pay benefits to claimants without a chance to fully litigate their entitlement, and then to require the Pennsylvania carrier to go to Indiana to institute an action in subrogation.

Therefore, I dissent.

LARSEN and ZAPPALA, JJ., join in this dissenting opinion.