574 A.2d 628

**Wanda COLMON, Appellant,**

v.

**MARYLAND AUTOMOBILE INSURANCE FUND, Appellee.**

Superior Court of Pennsylvania.

Argued March 7, 1990.

Filed April 25, 1990.

Reargument Denied June 6, 1990.

314

Barry A. Rosen, Philadelphia, for appellant.

Warren Sperling, Philadelphia, for appellee.

Before McEWEN, MONTEMURO and CERCONE, JJ.

MONTEMURO, Judge:

This is an appeal from the August 2, 1989, Order of the Court of Common Pleas of Philadelphia, wherein the court dismissed the complaint against the appellee, the Maryland Automobile Insurance Fund ("MAIF"). The trial court was compelled to dismiss the complaint filed by the appellant,

Wanda Colmon, as the court determined that it did not have personal jurisdiction over MAIF. We have carefully reviewed this matter is light of the existing case law, and we affirm.

We are mindful that Pennsylvania courts may exercise personal jurisdiction over nonresident defendants "to the fullest extent allowed under the Constitution of the United States and [it] may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.C.S.A. § 5322(b). As this Court has recognized "[t]he critical question in determining whether the defendant has purposefully directed his activities at residents of the forum is not whether it was foreseeable that defendant's activities would have an injurious effect in the forum state, but whether the defendant's conduct and his connection with the forum state were such that he could reasonably anticipate being 'haled' into court there.... Unilateral activity in the forum state by others having a relationship with a nonresident defendant cannot satisfy the requirement that a defendant have minimum contacts with the forum state." *Skinner v. Flymo, Inc.,* 351 Pa.Super. 234, 242, 505 A.2d 616, 619–620 (1986) (citations omitted). It is also well settled that the "minimum contacts" test "us not susceptible of mechanical application (but requires that) the facts of each case ... be weighed to determine whether the requisite 'affiliating circumstances' are present." *Kulko v. Superior Court,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978).

In reaching our decision in the case presently before us, we are guided by the decision of our Supreme Court in *United Farm Bureau Mutual Insurance Company v. United States Fidelity and Guaranty Company,* 501 Pa. 646, 462 A.2d 1300 (1983), even though we recognize that its factual underpinnings are distinguishable from the instant case in a number of ways. In *United Farm Bureau Mutual Insurance Company v. United States Fidelity and Guaranty Company,* the Palmer family, residents of the State of Indiana, became involved in an automobile

accident in Mercer County, Pennsylvania. Four members of the family filed claims for no-fault benefits from the Assigned Claims Plan of the Pennsylvania No–Fault Act. The United States Fidelity and Guarantee Company ("U.S.F. & G.") was assigned to administer the claims. In response to an action filed against it by the Palmers, U.S.F. & G. filed a Petition for Declaratory Judgment, seeking to determine whether the United Farm Bureau Mutual Insurance Company ("United Farm"), Loran Palmer's insurer, was responsible for Pennsylvania no-fault benefits. United Farm had issued a liability policy to Loran Palmer. This insurance policy did not provide for basic loss benefits, and Indiana did not have a no-fault statute. Further, United Farm was licensed and incorporated in the state of Indiana and did business exclusively in that state. It had no offices or agents in Pennsylvania, and had never consented to the exercise of jurisdiction by Pennsylvania courts.

The Pennsylvania Supreme Court determined that United Farm did not have the requisite "minimum contacts" with the state of Pennsylvania to support the exercise of personal jurisdiction over the Indiana company under the particular circumstances before the Supreme Court in that case. The Supreme Court specifically noted that "United Farm did not purposely avail itself of the privilege of writing no-fault auto insurance in Pennsylvania or elsewhere. It wrote only a liability policy for residents of a state which does not have no-fault. We do not believe that by promising to indemnify against liability appellant could reasonably foresee such a promise would subject it to direct action in Pennsylvania on a no-fault theory." *Id.*, 501 Pa. at 649, 462 A.2d at 1305–1306.

The Supreme Court went on to address the following section of the Pennsylvania Long Arm Statute, 42 Pa.C.S.A. § 5322(a), which in relevant part reads as follows:

(a) *General Rule.*—A tribunal of this Commonwealth may exercise personal jurisdiction over a person ...

who acts directly or by an agent, as to a cause of action or other matter arising from such person:

\* \* \* \* \* \*

(6)(i) Contracting to insure any person, property, or risk located within this Commonwealth at the time of contracting.

42 Pa.C.S.A. § 5322(a)(6). The Court opined:

Assuming United Farm under its liability policy insured a risk located within this Commonwealth when it issued the policy, nevertheless the risk was limited by its promises to defend its insureds and indemnify them in suits against the insureds, not itself, for damages arising out of the insureds' liability for claims for bodily injury or damage to property incurred in accidents involving the specifically insured car. Thus, it insured only the risk of paying those sums which its insureds become obligated to pay.... The policy does not, however, require United Farm to submit itself to the jurisdiction of a foreign state as a defendant in its own person....

Having no formal contacts with Pennsylvania, United Farm can at best be held to have foreseen the possibility of suit against the Palmers in our courts, and thus to reasonably expect to be brought into court here to defend them. Although traditional notions of fair play and due process would not be offended by requiring United Farm to defend the Palmers in our courts, we cannot uphold personal jurisdiction over United Farm in the present declaratory judgment action.

*Id.*, 501 Pa. at 659–660, 462 A.2d at 1306–1307.

In the present case, the appellant, Wanda Colmon, is a resident of Pennsylvania. In her complaint against MAIF, appellant alleges that in August of 1986, she was operating a motor vehicle with the permission of its owner, Rodney Colmon, in the state of Pennsylvania. She alleges that she became involved in an accident while operating the vehicle in the city of Philadelphia, and was injured. Appellant's complaint contains the following averments in support of

her claim for medical and work loss benefits under the MAIF policy [1]:

6. At the time of the aforementioned accident, Plaintiff was operating the automobile of Rodney Colmon with his permission and authority.

7. At the time of the aforementioned accident, Rodney Colmon was insured by the Defendant under policy number 799–11–04, which policy included bodily injury coverage.

8. At the time of the aforementioned accident, Plaintiff was insured by Defendant under policy number 799–11–04, by reason of her possession of the aforementioned automobile with the permission and authority of Defendant's insured, Rodney Colmon.

MAIF is an agency of the state of Maryland, and exists by virtue of Maryland statutory law for the specific and express purpose of providing motor vehicle insurance to Maryland residents who are unable, despite good faith efforts, to obtain automobile insurance in the private market. *See* Md.Code Ann., Art. 48A, § 243B. It is undisputed that the state agency, MAIF, is authorized to do business solely in the State of Maryland, and may provide insurance coverage only to Maryland residents for vehicles registered in the State of Maryland. MAIF does not have any employees or agents in Pennsylvania, and does not own any property in Pennsylvania.[2] It is quite clear that MAIF has

---

1. We recognize that the appellant has also filed a second complaint in the Philadelphia Court of Common Pleas which apparently seeks to recover uninsured motorist benefits from MAIF. This matter is not a part of the present appeal and will not be addressed. We are limited to a consideration of appellant's claim that she is entitled to pursue an action against MAIF in our courts to recover first party benefits under the MAIF policy.

2. Appellant argues that minimum contacts between MAIF and Pennsylvania can be established because, *inter alia,* Mr. James W. Himes, assistant attorney general for the state of Maryland, testified during his deposition testimony that MAIF "has filed papers that authorize the Commonwealth's Secretary of Transportation to accept service of process on [MAIF's] behalf." Brief for Appellant at 11. This description of the testimony of Mr. Himes is not complete and is thus misleading. As Mr. Himes testified, the filing with the Department of Transportation was necessitated by the ICC and related to interstate

never undertaken any action to purposely avail itself of the privilege of issuing auto insurance policies outside of the state of Maryland to residents of any other state except Maryland. Although the insurance policy issued by MAIF to Rodney Colmon does provide first party benefits to persons injured while operating the insured vehicle with the permission of the named insured, specifically excepted from this coverage is the precise situation in the case at bar. The MAIF policy, in such a situation, does not apply to any person other than a Maryland resident, if the accident occurs outside of the state of Maryland.[3]

Based upon the record before us, we find no error in the trial court's holding that MAIF has not purposely established minimum contacts with Pennsylvania to subject it to the personal jurisdiction of our courts in this litigation. Rodney Colmon's unilateral action in driving the insured automobile into Pennsylvania and then permitting a Pennsylvania resident to operate the auto does not establish minimum contacts between MAIF and Pennsylvania. By Maryland statute, MAIF's business is limited to insuring Maryland residents in specified situations. Given the express terms of the MAIF policy, and the *complete absence* of any conduct on the part of MAIF to affiliate itself with

truck carriers. N.T., November 30, 1988, at 33. We do not find this testimony relevant in determining the minimum contacts of MAIF with Pennsylvania for the purposes of a direct action filed by a Pennsylvania resident, brought on a contract of insurance issued to a private individual for his personal automobile. Likewise, appellant claims that minimum contacts exist between MAIF and Pennsylvania for the purposes of appellant's action, because MAIF may be subject to the jurisdiction of a Florida court in another lawsuit. Brief for Appellant at 11. Mr. Himes vaguely referred to a lawsuit in Florida where one of MAIF's policyholders was apparently responsible for an accident. N.T., November 30, 1988, at 31-32. The fact that a Maryland resident, an insured of MAIF, was sued in another state, and MAIF became involved in that litigation has little to do with the case presently before us.

3. Our holding in the present case is limited to a determination of whether personal jurisdiction may be exercised over MAIF in the present action. We do not determine whether appellant could ultimately prevail on her claim for first party benefits should she institute a claim for such benefits, or others, in the state of Maryland. It is for the Maryland court to determine the validity of any exclusion provisions which exist in the MAIF policy issued to Rodney Colmon.

Pennsylvania, we agree with the trial court that, consistent with traditional notions of fair play and substantial justice, MAIF could not have reasonably anticipated being haled into court here to respond to a Pennsylvania resident's claim for first party benefits when such claim arises from an accident which did not occur in the state of Maryland. "As has long been settled ... a state court may exercise personal jurisdiction over a nonresident defendant only so long as there exist "minimum contacts" between the defendant and the forum State.... The concept of minimum contacts, in turn, can be seen to perform two related, but distinguishable, functions. It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *World–Wide Voldswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980) (citation omitted).

Order affirmed.