## Hissong Kenworth Leasing Inc. v. D&FJ Co. Inc.

C.P. of Jefferson County, no. 760-2003 Civil.

*Stephen A. Hall* and *Jacob S. Polochak,* for plaintiffs.
*Walter Faderewski* and *Steven Poljak,* for defendants.

FORADORA, *P.J.,* June 24, 2004—And now, June 24, 2004, after careful consideration of defendant's preliminary objections, this court finds the following:

## FACTS

This lawsuit involves an insurance policy covering a Kenworth tractor leased by D&FJ Co. Inc. d/b/a Eagle Freight from Hissong Kenworth Leasing Inc. Prior to December 16, 2000, Eagle Freight and Hissong entered into a full service agreement. Under the terms of the lease, Eagle Freight was to lease tractors from Hissong for use in its business. Per the agreement, Eagle Freight was to procure insurance for primary physical damage coverage for the tractors. Eagle Freight contacted Lyons Insurance Agency Inc. who was to procure the insurance through Occidental Fire and Casualty Company of North Carolina and Wilshire Insurance Company through United Brokers and name Hissong and PACCAR Leasing Company as additional insured.

The tractor was damaged on or about December 16, 2000, when Vero Radovanovic, an employee of Eagle Freight, was involved in an accident on State Route 80,

in Washington Township, Jefferson County, Pennsylvania. The tractor, a 2000 Kenworth, was deemed a total loss and was alleged to have an approximate value of $75,606.28 excluding the salvage value. Hissong and PACCAR, as additional insured, attempted to collect from Occidental and Wilshire and were subsequently denied coverage.

In short, this case involves an Ohio-based insurance agency (Lyons) who placed a policy of insurance with a North Carolina insurance carrier (Occidental/Wilshire) through an intermediary located in the State of Indiana (United Brokers), with the insured being a trucking company based out of Ohio (Eagle Freight). A driver for Eagle Freight was involved in an accident in Jefferson County while traveling through Pennsylvania using tractors of additional insured's (Hissong/PACCAR) who were domiciled in the State of Washington.

On or about December 6, 2002, plaintiff commenced this action in Philadelphia County, Pennsylvania. On or about April 10, 2003, Occidental and Wilshire filed preliminary objections raising the issue of improper venue and defendant Lyons filed preliminary objections on May 30, 2003, raising the issue of lack of personal jurisdiction. The Court of Common Pleas of Philadelphia County dismissed the lawsuit on June 3, 2003, based upon the defendants' preliminary objections. The defendant insurers argued that the action should have been brought in either Jefferson County, Pennsylvania, or the State of Ohio.

Plaintiffs refiled this lawsuit in Jefferson County. Defendant Lyons again filed preliminary objections on November 14, 2003, and alleged that this court lacks

jurisdiction under Pa.R.C.P. 1028 and venue under Pa.R.C.P. 2179.

Plaintiff alleges that if Occidental and Wilshire can rightfully deny coverage, then Lyons neglected to procure proper insurance, and the policy obtained through Occidental and Wilshire was defective through the sole fault of Lyons. Plaintiff further alleges that Lyons is liable to the plaintiffs to the same extent as the insurer would have been liable had the insurance been properly effectuated.

The issue at the heart of the matter is whether an out-of-state specialty insurance agency can be haled into a Pennsylvania court when it places an insurance policy outside of Pennsylvania and subsequently denies coverage based on an accident occurring in Pennsylvania.

## DEFENDANT'S OBJECTION TO JURISDICTION

Defendant Lyons claims that it is a corporation organized under the laws of the State of Ohio and is not qualified as a foreign corporation. Further, Lyons maintains that it does not conduct business within the Commonwealth of Pennsylvania; owns no real property and maintains no contacts within the Commonwealth; does not insure any individuals within the Commonwealth and has caused no harm or tortious activity within the Commonwealth.

Defendant also argues that at no time relevant hereto did it consent to, or submit itself to, the jurisdiction of the courts of the Commonwealth of Pennsylvania. In addition, defendant Lyons states that the contract was not entered into in the Commonwealth of Pennsylvania; none

of the transactions or occurrences relevant to the making of the contract occurred in the Commonwealth of Pennsylvania; and for the reasons cited, the allegations set forth in the complaint are insufficient to establish that defendant Lyons is subject to the jurisdiction of Pennsylvania courts.

Plaintiff responds that defendant Lyons has an agency agreement with Erie Insurance Exchange that gives the defendant the ability to bind coverage for Erie Insurance. Plaintiff also points to the fact that the owner of defendant Lyons testified that, while none of the direct insured were Pennsylvania residents, it was likely that there were additional insured that were Pennsylvania residents. Plaintiff bases its minimum contacts analysis on the purposeful availment of the benefits and protections of Pennsylvania insurance laws.

## PENNSYLVANIA PERSONAL JURISDICTION

The power of Pennsylvania courts to exercise jurisdiction over a non-resident defendant is dependent upon two requirements. First, jurisdiction must be authorized by the Commonwealth's Long Arm Statute, 42 Pa.C.S. §5321; and, second, the exercise of jurisdiction must comport with constitutional principles of due process. *Kenneth H. Oakes Ltd. v. Josephson,* 390 Pa. Super. 103, 105, 568 A.2d 215, 216 (1989).

The Pennsylvania Long Arm Statute, 42 Pa.C.S. §5322(b), authorizes courts to exercise jurisdiction over non-resident defendants "to the fullest extent allowed under the constitution of the United States." *Id.* at 105-106, 568 A.2d at 216. Therefore, any discussion relating to jurisdiction based on the constitution of the United

States must focus on constitutional due process constraints. *Temtex Products Inc. v. Kramer,* 330 Pa. Super. 183, 194, 479 A.2d 500, 505-506 (1984).

A court may exercise two types of personal jurisdiction over a non-resident defendant. A court can base specific jurisdiction on the specific acts of the defendants that give rise to the cause of action, or general jurisdiction on the defendant's general activity within the state. *Derman v. Wilair Services Inc.,* 404 Pa. Super. 136, 590 A.2d 317 (1991).

For a court to exercise specific jurisdiction, due process requires that a defendant have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945). These minimum contacts must have a basis in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298 (1958).

However, the clear focus in *International Shoe* was on fairness and reasonableness. *Kulko v. California Superior Court,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978). The court declined to establish a test based on the specific number of contacts between a state and the defendant and stated:

"Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it

was the purpose of the due process clause to insure." 326 U.S. at 319, 66 S.Ct. at 160.

After *International Shoe* and *Hanson,* courts now must consider (1) whether these contacts are sufficient to meet the "traditional notions of fairness" described in *International Shoe* and (2) whether the defendant "purposefully availed" itself of the benefits and protections of the forum state.

Such jurisdictional limits serve due process by assuring that a defendant whose property is at stake does not suffer meaningful inconvenience if compelled to litigate in the forum state. Thus, jurisdictional limits are designed to ensure that defendants are not so distant from, or unfamiliar with, the forum state that they are unable to maintain a defense in that forum. In Justice Brennan's words, "the constitutionally significant 'burden' to be analyzed relates to the mobility of the defendant's defense." [1]

However, due process limits on jurisdiction do not protect a defendant from all inconvenience of travel, *McGee v. International Life Insurance Co.,* 355 U.S. 220, 224, 78 S.Ct. 199, 201 (1957), and it would not be sensible to make the constitutional rule turn solely on the number of miles the defendant must travel to the courtroom. Instead, and as noted by Justice Brennan, the constitutionally significant "burden" to be analyzed relates to the mobility of the defendant's defense.

Absent specific jurisdiction, Pennsylvania courts may still exercise general personal jurisdiction over non-resi-

---

1. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 301, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (Brennan, J., dissenting).

dent defendants if in personam jurisdiction does not exist. In contrast to traditional in personam jurisdiction analysis, general jurisdiction exists regardless of whether the cause of action is related to the defendant's activities in this Commonwealth as long as the defendant's activities are "continuous and substantial." *Skinner v. Flymo Inc.,* 351 Pa. Super. 234, 239, 505 A.2d 616, 619 (1986).

## SPECIFIC JURISDICTION

Based on the deposition testimony of Gordon Lyons, the sole owner of Lyons Insurance Agency, it is clear that a significant portion of his business includes the procuring of surplus-lines insurance for transportation carriers who likely operate in the Commonwealth of Pennsylvania. Therefore, defendant Lyons knew or had reason to know that its insured would be traveling through or in the State of Pennsylvania. Further, Lyons knew or should have known that the risk of loss placed with each vehicle it insured could be traveling throughout the Commonwealth of Pennsylvania.

The plaintiff points to the case *Adams v. Unione Mediterranea Di Sicurta,* 234 F. Supp.2d 614 (E.D. La. 2002), for the proposition that jurisdiction is proper when an insurer has knowledge that its product will enter the stream of commerce of a particular forum. In *Adams,* an Italian cargo insurer was subject to personal jurisdiction in Louisiana in an action to have the insurer contribute to payment of cargo lost in Louisiana even when the defendant had never stipulated to an insurance contract in the United States; maintained no offices, P.O. boxes, addresses or telephone number listings in the United

States; never qualified to do business in the United States; and did not own or lease any real or personal property in the United States, yet the court found jurisdiction on the basis of the fact that the defendant had knowledge that the product would be shipped through Louisiana. *Id.*

The defendant argues that *Adams* has no application to the instant case because the defendant in *Adams* had specific knowledge that the insured goods would be traveling through Louisiana. However, the defendant in *Adams* also had agents, servants and employees in the United States and employed law firms and adjusting companies within the boundaries of the United States.

*Adams* does apply to the instant case because the specialty-lines insurance market is that segment of the insurance industry where the more difficult or unusual risks are written. Because specialty-line's insureds tend to be more unusual or higher risk, the specialty-lines market is characterized by a high degree of specialization.

For an account to be placed in the surplus-lines market it must be declined by the standard market. If a retail insurance agent or broker cannot find coverage, they may turn to the surplus-lines market to purchase appropriate coverage. The insured's agent or broker contacts a surplus-lines broker for placement with specialty insurers operating in the surplus-lines market, and quite often, from out of state.

This demonstrates that defendant Lyons, operating a specialty insurance business by its own admission, should have had direct knowledge that by insuring multi-state trucking operations, the insurance carrier by its insured could reach and travel through the Commonwealth of Pennsylvania.

The defendant also maintained business ties similar to the defendant in *Adams*. Lyons admits having an agency agreement at the time of the incident with Erie Insurance Exchange, a Pennsylvania-based insurance carrier, which gave Lyons the ability to bind coverage for Erie Insurance. Further, Lyons business with Erie Insurance totaled between 50 percent-60 percent of its income. In addition to Erie Insurance, defendant Lyons is currently placing policies with another Pennsylvania carrier, Donegal Insurance. Since defendant Lyons should have had knowledge that its insured could be traveling through the Commonwealth of Pennsylvania and it also maintains agency relationships similar to those found in *Adams,* it is this court's opinion that defendant Lyons has maintained contacts sufficient to warrant jurisdiction under *Adams*. Further, the agency agreements with Pennsylvania businesses that constitute at least half of the defendant's income allow the defendant to purposefully avail itself of the benefit and protection of Pennsylvania's laws.

Defendant Lyons points to the case *United Farm Bureau Mutual Insurance Company v. U.S. Fidelity and Guarantee Company,* 501 Pa. 646, 462 A.2d 1300 (1983), for the proposition that a Pennsylvania court lacks jurisdiction over a foreign insurance company when the only alleged contact with Pennsylvania is an automobile accident occurring within the borders of the Commonwealth. In *United Farm Bureau Mutual Insurance,* an accident occurred in the Commonwealth of Pennsylvania; the four injured members of the family, including the driver, filed claims for no-fault benefits under the assigned claims plan of the Pennsylvania No-Fault Act. In accordance with the assigned claims plan, United

States Fidelity and Guarantee Company, a carrier authorized to write automobile insurance policies in Pennsylvania, was assigned to administer the plaintiff's claims. U.S.F. & G. refused to pay no-fault benefits and asserted that any benefits to which plaintiffs were entitled were owed by United Farm Bureau Mutual Insurance Company, an Indiana insurance company, which had issued a liability policy to Loran Palmer in Indiana. *United Farm Bureau Mutual Insurance* at 650, 462 A.2d at 1302.

The court in *United Farm Bureau Mutual Insurance* stated:

"This court does not believe a carrier who promises to indemnify and provide a defense against liability could reasonably foresee that those obligations would subject it to direct action for foreign no-fault benefits. See *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Here the foreign company's only contact with Pennsylvania is an automobile accident involving its insureds under a liability insurance policy. That policy contains nothing more than a provision for compliance with state financial responsibility laws." *Id.* at 649, 462 A.2d at 1301.

The instant case is distinguishable from *United Farm Bureau Mutual Insurance* in that the instant defendant could reasonably forsee being haled into court in Pennsylvania. Mr. Lyons testified that he provides trucking insurance that is a "specialty line" and constitutes what is known as excess or surplus-lines insurance.

The difference between *United Farm Bureau Mutual Insurance* and the instant action is that *United Farm Bureau Mutual Insurance* provided a policy that con-

tained nothing more than a provision for compliance with state financial responsibility laws and the case at bar involves a policy that provides high-risk insurance to a multi-state trucking operation. Since the defendant was in the business of providing specialty excess high-risk insurance to a trucking operation that it knew was multi-state, it is reasonable to assume that the defendant could foresee being haled into this forum for a suit originating under a policy specifically written for such an incident.

Turning now to the "traditional notions of fairness" described in *International Shoe,* this court must examine the level of contacts in the forum balanced against fairness. The due process clause seeks to assure that a defendant whose property is at stake does not suffer meaningful inconvenience if compelled to litigate in the forum state. Thus, jurisdictional limits are designed to ensure that defendants are not so distant from, or unfamiliar with, the forum state that they are unable to maintain a defense in that forum.

In the instant action, there is no real argument that jurisdiction in Jefferson County, Pennsylvania, would be in contradiction to fair play and substantial justice. Specifically, Lyons Insurance is located near Cleveland, Ohio, in close proximity to the Pennsylvania border, roughly 150 miles from Jefferson County.

Balancing the defendant's contacts and purposeful availment against traditional notions of fair play and substantial justice, it is this court's opinion that the contacts are sufficiently significant to make it fair and reasonable for the defendant to submit to Pennsylvania's jurisdiction.

## GENERAL JURISDICTION

As stated above, in contrast to traditional in personam jurisdiction analysis, general jurisdiction exists regardless of whether the cause of action is related to the defendant's activities in this Commonwealth. Specifically, such jurisdiction is valid "regardless of whether the cause of action is related to the defendant's activities in Pennsylvania, as long as the [corporate] defendant's activities in this Commonwealth are 'continuous and substantial.' " *Garzone v. Kelly,* 406 Pa. Super. 176, 183, 593 A.2d 1292, 1296 (1991); see also, *Skinner v. Flymo,* 351 Pa. Super. 234, 239, 505 A.2d 616, 619 (1986).

Lyons admits that it maintained an agency agreement at the time of the incident with Erie Insurance Exchange, a Pennsylvania-based insurance carrier, which gave Lyons the ability to bind coverage for Erie Insurance. Further, Lyons business with Erie Insurance totaled between 50 percent-60 percent of its income. In addition to Erie Insurance, defendant Lyons is currently placing policies with another Pennsylvania carrier, Donegal Insurance.

Since such volume of defendant's business is generated through agency agreements with Pennsylvania businesses, it is reasonable to conclude that the defendant's acts within the Commonwealth are systematic and continuous and as such, can also provide the basis for general jurisdiction.

## DEFENDANT'S OBJECTION TO VENUE

Defendant Lyons alleges that venue is improper under Pa.R.C.P. 2179, because, while the damage may have

occurred to the tractor in Jefferson County, the damage was merely incidental and not germane to the case. Defendant alleges that the cause of action, the transactions and occurrences, all arose and took place outside of the Commonwealth.

Defendant points to Pennsylvania R.C.P. 2179—venue

"(a) Except as otherwise provided by an Act of Assembly, by Rule 1006(a.1) or by subdivision (b) of this rule, a personal action against a corporation or similar entity may be brought in and only in

"(1) the county where its registered office or principal place of business is located;

"(2) a county where it regularly conducts business;

"(3) the county where the cause of action arose; or

"(4) a county where a transaction or occurrence took place out of which the cause of action arose."

Plaintiff argues that it is not registered in Jefferson County, nor is its principal place of business located in Jefferson County; it does not conduct business in Jefferson County; the cause of action arose outside of the Commonwealth of Pennsylvania in that all transactions and occurrences material to the making of the contract and the denial of coverage occurred outside of the Commonwealth of Pennsylvania; and, there is no transaction or occurrence that took place in Jefferson County out of which this cause of action arose, since all of the transactions and occurrences material to the making of the contract and denial of insurance coverage took place outside of the Commonwealth of Pennsylvania.

## PENNSYLVANIA VENUE

In Pennsylvania, the law is well established that a party has a constitutional right to seek a change of venue. See *Felts v. Delaware Lackawanna and Western Railroad Co.,* 195 Pa. 21, 45 A.2d 493 (1900). The trial court is vested with broad discretion to determine whether the choice of forum was proper. *Masel v. Glassman,* 456 Pa. Super. 41, 689 A.2d 314 (1997). The decision of the trial court should be based upon the individual facts of each case and such a decision will not be disturbed where the trial court's decision is reasonable based upon the record. *Monaco v. Montgomery Cab Company,* 417 Pa. 135, 208 A.2d 252 (1965).

Examining Pennsylvania R.C.P. 2179(a): "(3) the county where the cause of action arose; or (4) a county where a transaction or occurrence took place out of which the cause of action arose," one can see that the legislature intended to distinguish between the county where the cause of action arose and the county where a transaction or occurrence took place out of which the cause of action arose. This distinction, though subtle, indicates that while the cause of action (namely the denial of coverage) may have occurred outside of the Commonwealth of Pennsylvania, the transaction or occurrence that gave rise to the cause of action (the accident), occurred in Jefferson County. Since the denial of coverage and the subsequent alleged breach of contract would not have occurred but for the accident in Jefferson County, venue in Jefferson County is deemed proper under Pa.R.C.P. 2179(a)(4).

Also, looking at the preliminary objection to venue filed by defendant Lyons, the defendant fails to address

Pennsylvania R.C.P. 2179(b), a critical provision to this action, which states:

"(b) An action upon a policy of insurance against an insurance company, association or exchange, either incorporated in Pennsylvania or doing business in this Commonwealth, may be brought

"(1) In a county designated in subdivision (a) of this rule; or

"(2) In the county where the insured property is located; or

"(3) In the county where the plaintiff resides, in actions upon policies of life, accident, health, disability, and livestock insurance or fraternal benefit certificates."

Clearly, under Pa.R.C.P. 2179(b)(2), venue is proper because the insured property was located at the time of the accident in Jefferson County, Commonwealth of Pennsylvania. Further, defendant was at the time and is currently conducting a large volume of business in the Commonwealth of Pennsylvania by way of the agency agreements that it maintains with Pennsylvania insurers, allowing it to bind coverage in their names.

## ORDER

And now, June 24, 2004, after careful consideration of the defendant's preliminary objections, this court now enters the following:

(1) Ordered that defendant Lyons' preliminary objections to jurisdiction is hereby denied.

(2) Ordered that defendant Lyons' preliminary objections to venue is hereby denied.